## TOMLINSON *against* WARD :

### IN ERROR.

To authorize the appointment of a receiver, in a suit in chancery, the bill must lay a foundation for it, by stating the facts, which shew its necessity or propriety.

In the appointment of a receiver, the court will require him to give security for the faithful discharge of the trust.

THIS was a bill in chancery, brought by *Ward* against *Tomlinson,* stating, that they were partners in trade, without limitation of time ; that the co-partnership commenced in *November* 1797, and ended in *July* 1816 ; that the parties dealt largely in merchandize, &c. praying for an account before a committee, the appointment of persons to distribute the property, and a receiver to collect the debts. As to the appointment of a receiver, the plaintiff stated, in general terms, that he was, on principles of equity, entitled to the interposition of the court, to appoint some meet person to be a receiver of all the co-partnership effects, and to hold the same to await the final order of the court.

A committee were appointed, who took an account, and made their report, and afterwards, a second report ; which,

In a suit in chancery between partners for an account, the court has a discretionary power to appoint distributors to divide the joint property ; and it is not necessary, that by the terms of the decree appointing them, they should be required to act under oath, or to make a return of their doings.

*A.* and *B.* being partners, *A.* without the consent of *B.* borrowed money at an extra rate of interest, on the credit of the company, to pay his private debts, and credited the company with the money so applied and the legal interest only. Held, that the excess of interest thus paid by, beyond the amount credited to, the company, was a proper charge against *A.*

*A.* one of two partners, having a private claim against *F.*, applied, in opposition to the will of *B.* the other partner, in discharge of that claim, funds received by *A.* in satisfaction of a company debt against *V.*, and then suffered the latter debt to become barred by the statute of limitations, and lost. Held, that the debt thus lost was a proper charge against *A.*

The allowance of costs, in chancery proceedings, is within the discretionary power of the court, and constitutes no ground of error ; especially, where such allowance is in favour of the prevailing party.

after a remonstrance against them by the defendant, were accepted.

Among other things, the committee found, that the company, for several years after they commenced business, had two stores, one in *New-Haven*, the other in *New-York*; that the plaintiff took charge of the former, and the defendant of the latter; that, without any express agreement, the general course adopted at both stores, was, to receive and credit the private funds of the defendant, and to pay, and charge to him, when paid, his private debts; that the demand for these debts, during the first and second years, exceeded the means furnished to discharge them, by the defendant, and the cash funds at the command of the company, and induced the defendant, without the knowledge or consent of the plaintiff, to draw money, in some instances, for that object, in the name of the company, from brokers, at a much higher rate of interest than the debt would carry, when thus paid and charged to him. As this course was not warranted by any express or implied agreement, the committee considered the excess of interest thus paid by the company, amounting to 450 dollars, as a proper charge against the defendant, which they accordingly allowed, with interest.

The defendant having remonstrated against one of the charges against him, allowed by the committee in their first report, they re-examined that part of the case, and, in their second report, stated the following facts, with their opinion thereon. In the year 1797, *Elisha Frost* and *Dutton & Frost* were largely indebted to the defendant; and to secure that debt, *Frost*, on the 28th of *February* 1798, procured a note, signed by himself, *Curtis Young* and others, for the sum of 7000 dollars, payable to the defendant, and credited to him on the defendant's books, which exceeded the amount then due from him to the defendant. Soon after the co-partnership of *Tomlinson & Ward* commenced, large sums were advanced by them to *Frost*, in goods, money and notes, to be repaid in provisions: and for greater security, a letter of credit was procured, by *Frost*, from *Victory Tomlinson* and *Ozias Tyler*, on which advancements were made, and charged to them, to the amount of 763*l.* 19*s.* 10*d.* *Frost*, also, received large advancements on his own account. Soon afterwards, *Victory Tomlinson* procured and delivered, partly by himself and partly through *Frost*, provisions and other arti-

*Hartford,*
*June, 1818.*

Tomlinson
*v.*
Ward.

cles, sufficient to pay the debt charged jointly against him, *Tyler* and *Frost,* which he expected would be so applied. The provisions delivered by, and credited to *Victory Tomlinson,* in the winter of 1798, amounting to 34*l.* 8*s.* 0*d.* were, in *May* 1799, transferred from his account to the account of *Frost;* to whom all the provisions were credited. On adjusting the nett proceeds of the provisions and other articles credited to *Frost,* on the 3d of *July* 1799, his credit exceeded the debt due from him individually above 1200*l.,* a sum more than sufficient to discharge the debt due from him, *Victory Tomlinson* and *Tyler;* and, on that day, he was charged with an indorsement of 800*l.* on the note of 7000 dollars, given by himself, *Curtis Young* and others, to the defendant. It appeared, also, from the books, that, on such adjustment, a deduction was made of 52*l.* 14*s.* 6*d.* for pork delivered the preceding year from *Derby,* as had of *Victory Tomlinson,* included in these sales, but to be accounted for with the remainder of that parcel. But the committee did not find the amount of provisions so received from *Victory Tomlinson;* nor how they were accounted for, or applied; or that any other provisions were received, or sold, on account of *Victory Tomlinson,* and credited to *Frost.* On these facts, the committee were of opinion, that said sum of 52*l.* 14*s.* 6*d.* ought to apply in part payment of the debt from *Victory Tomlinson,* *Tyler* and *Frost,* and that part of the surplus credit to *Frost,* ought to have been applied to discharge the balance of that debt. And because it was, contrary to the remonstrances of the plaintiff, applied, by the defendant, to his individual benefit, and the debt against *Victory Tomlinson, Tyler* and *Frost* suffered to become barred by the statute of limitations, and lost, *Victory Tomlinson* being then a man of large property; the committee were of opinion, that such balance, after deducting therefrom the sum of 52*l.* 14*s.* 6*d.,* was a proper charge against the defendant.

From both reports there appeared to be a balance of 21,491 dollars, 11 cents, due from the defendant to the plaintiff; and a decree was accordingly passed for that sum, with costs of suit, taxed at 694 dollars, 36 cents. To reverse that judgment the present writ of error was brought.

*Sherman* and *Staples,* for the plaintiff in error, contended, that the judgment ought to be reversed, 1. Because the court

appointed a receiver, there being no foundation laid for such appointment, by the allegations of the bill, or the finding of the committee. Upon first principles, every man has a right to the possession and management of his own property; and the court will never take it out of his hands, by the appointment of a receiver, especially in a case of co-partnership, where there is a confidence between the parties, unless a clear case of *fraud* or *insolvency* be stated and proved. Here, there is no imputation of either.

2. Because the authority given to the receiver is not properly guarded and limited, no security being required or taken for his fidelity, and no time fixed for rendering his account. *(a)*

3. Because the distributors appointed are not required to be under oath, nor to make any return of their doings.

4. Because the committee, in their report, have charged the plaintiff in error 450 dollars extra interest, which, upon the facts found, ought to be charged to the company.

5. Because the committee and the court have committed an error, in charging over to the plaintiff in error, the debts due from *Victory Tomlinson, Tyler* and *Frost* to the company.

6. Because costs of suit were taxed and allowed against the plaintiff in error, without any allegation in the bill of a previous demand having been made for an account, or a settlement.

*Daggett* and *N. Smith,* for the defendant in error.

SWIFT, Ch. J. It appears, that *Tomlinson,* the plaintiff in error, borrowed money, on the credit of the company, to pay his private debts; and then, without the consent of *Ward,* took money at an extra rate of interest to meet the payments; which extra interest was charged to the company. I am of opinion, that he had no right to do this; and that such extra interest was justly and properly charged to him.

In regard to the debt due from *Victory Tomlinson, Tyler* and *Frost,* it appears that the defendant, (now plaintiff in

*(a)* The record of the appointment was in these words: " And the court also appoints *R. S. Baldwin,* Esq. to receive and collect the debts due to said co-partnership, and the avails thereof pay over, in equal moieties, to said *Tomlinson* and to said *Ward.*"

*Hartford,*
June, 1818.

Tomlinson
*v.*
Ward.

error) remonstrated against the acceptance of the report of the committee, because they had charged it against him on the ground, that he had suffered it to be outlawed : but in the second report of the committee, it is explicitly stated, that it was allowed, because the defendant had misapplied the provisions delivered to the company in payment of this debt, to the payment of a private debt due from *Frost* to him, and then suffered it to be barred by the statute of limitations. This was no ground for setting aside the report of the committee, and the court did right in accepting it.

It was a proper exercise of the discretionary power of the court to appoint distributors to divide the joint property between the parties.

Courts of equity have undoubtedly a power to appoint receivers in proper cases : but the facts should be stated in the bill, which shew the necessity or propriety of the appointment, so that the other party may answer them. A receiver ought to give security for the faithful discharge of the trust. As no facts were stated in the bill, and no security given by the receiver, I am of opinion, that this part of the decree be reversed ; and that the same be affirmed on every other point.

EDMOND, SMITH, BRAINARD and HOSMER, Js. were of the same opinion.

GOULD, J. I concur in the opinion, that that part of the decree, which relates to the appointment of a receiver, ought to be reversed. Such an appointment, in cases of this sort, is, by no means, a matter of course : if it were, great inconvenience and injustice would often ensue. A partner, however solvent, and without any imputation upon his integrity, or competency, might be dispossessed of his property, for an indefinite period, to the great derangement of his affairs, and even to his own ruin. The rule, therefore, is, that where either of the original partners is defendant in the bill, and no particular disqualification is shown against him, the confidence, reposed in him, precludes the appointment of a receiver. *Philips* v. *Atkinson,* 2 *Bro. Ch. Ca.* 272. *Read* v. *Bowers,* 4 *Bro. Ch. Ca.* 441. In the present case, no disqualification, on the part of the plaintiff in error, appears ;

and the finding, upon which the whole decree is founded, being special, none certainly can be presumed.

In this view of the first error assigned, there is no occasion for considering the second. For, if upon the facts disclosed, no receiver ought to have been appointed ; the mode, in which the appointment has been made, cannot affect the judgment to be given here.

In the third assignment, the power of the court below, to appoint distributors, is not questioned : but it is objected, first, that, by the terms of the decree, they are not required to act under oath ; and secondly, that they are not directed to make return of their doings. If an oath were admitted to be necessary, the first branch of the exception could not prevail. For the objection is not taken to any proceedings of the distributors ; but to the form, in which their powers are conferred : and that form is the same, as has obtained, in all analogous cases. In assigning auditors, in the action of account, it is never directed, by the court, either in the *English* practice, or our own, that they act under oath ; and the same observation applies to our mode of appointing referees, in actions at law, and committees upon bills in equity. To allow the objection, would, therefore, be virtually to impeach the established form, in which similar appointments have always been made. In the instances, just mentioned, auditors, referees and committees are left, precisely as the distributors, in the present instance, have been, to conform to the law, without any particular direction from the court. If the law requires them to act under oath, it surely cannot be presumed, that they will act without oath. And if they deviate, in this respect, from the course, which the law prescribes ; the objection must be taken, if at all, in a different stage of the proceedings. Whether an oath, in this particular instance, is necessary, or not, we cannot, therefore, now, judicially determine. I acknowledge, for myself, however, that I am, at present, unapprized of any law, or usage, of the state, requiring it. And I do not know, that our courts of justice, have ever framed, or sanctioned, an oath, unless some authority could be found for it, either in statute-law, or precedent. To the second branch of the exception, (that the distributors are not directed to make return of their doings,) it has been justly replied, at the bar, that it is always in the power of the court below, to enforce a return :

And if any unnecessary delay occurs, on the part of the distributors ; an order, for that purpose, may, at any time, be made.

In relation to the charge of 450 dollars, allowed against the plaintiff in error, for *extra* interest, and the allowance of which is the subject of the fourth error assigned, I am unable to discover any plausible ground of exception. That allowance is clearly warranted, by the fact, that the company has been obliged to pay the same rate of interest, and at least, to the same amount, for the sole benefit of the plaintiff in error.

Under the fifth error assigned, some confusion has been introduced into the argument, by the different views, which have been taken by the counsel, of the finding of the committee. It has been contended, that the company have sustained no loss, in consequence of the course, pursued by the plaintiff in error, in relation to their accounts with *Frost*, and with *Victory Tomlinson;* because credit was given to the company, on their own books against *Frost*, equal to the amount, endorsed upon the note, which the plaintiff in error held against *Frost :* and it is added, that this sum was never *charged over*, by the plaintiff in error, to the company. It would have been extraordinary, indeed, if it had been so charged over : such a charge would have subjected the company to a *double* loss of the amount, charged to *Frost*. For the debt, apparently due to him, upon the company books, was altogether *fictitious ;* it having been raised, by giving him a credit, which ought to have been given to *Victory Tomlinson.* Of what use, then, was the diminution of this ideal credit, to the company ? Clearly of none at all. On the contrary, it is impossible for the court not to see, that the operation in question, was, in effect, an application of partnership-funds, to the use of the plaintiff in error—or, in other words, of property received by the company, in payment of a debt against *Victory Tomlinson*, to a debt due from *Frost* to the plaintiff in error. The charging to *Frost*, on the company-books, and the indorsing upon his note to the plaintiff in error, of a sum which ought to have been passed to the credit of *Victory Tomlinson*, in payment of the company's debt against *him*, were essentially, without any *charge* of that sum to the company, an appropriation of partnership funds, to the same amount, to the private debt, which the

plaintiff in error held against *Frost.* And this unauthorized appropriation has resulted in the entire loss, to the company, of the debt due to them, from *Victory Tomlinson.* The whole proceeding, (to express it in a few words,) is this: The plaintiff in error has misapplied, to a debt, due from *Frost,* to himself, funds received in satisfaction of a company debt against *Victory Tomlinson;* and in consequence of this misapplication, the latter debt is entirely lost. But he now resists the claim of his partner, to be indemnified for this loss, by endeavouring to convert that misapplication of the partnership funds, into payment of a company debt to *Frost,* to whom no debt was due. But further: if the debt originally due to the company, from *Victory Tomlinson* were not barred; he might still compel an application to his credit, of the property, delivered to the company, for that purpose, or subject them, for the value of the property: so that, even upon this supposition, the loss to the company would, upon the principles of the plaintiff in error, be the same; since they would be charged, in the one form or the other, with property which has been appropriated to the individual benefit of the plaintiff in error.

The last error assigned is urged, only as a ground of objection to the costs allowed, by the court below. In our chancery proceedings, the allowance of costs is, in strictness, discretionary; though, in practice, our rule is, generally, much the same, as at law. The question, therefore, is not *stricti juris:* and I see no sufficient reason, in this case, for rejecting the allowance.

I, therefore, concur in the opinion, that the decree, except so much of it, as relates to the appointment of a receiver, ought to be affirmed.

PETERS, J. I concur in the opinion of the Chief Justice, affirming this decree upon the merits, and reversing it as to the receiver; but not for any defect in the bill.

The appointment of a receiver is a matter of discretion, and may be made on motion, as well as for reasons stated in the bill. *2 Har. Chan. Prac.* 107. *Jones* v. *Pugh,* 8 *Ves.* jun. 71. *Coke* v. *Gwyn & al.* 3 *Atk.* 690. Whenever it appears from the bill, the answer, or testimony at the hearing, that a receiver is necessary, the court will appoint one; *but never without surety.* In this case, no surety was requi-

*Hartford,*
*June, 1818.*

Tomlinson
*v.*
Ward.

red, or given. " I," therefore, as a Lord Chancellor(*a*) once said, " entirely disapprove of going out of the course of the court, which requires security by the receiver, and two sureties, in a recognizance."

TRUMBULL and CHAPMAN, Js. gave no opinion, the former being related to one of the parties, and the latter having been absent when the case was argued.

> Judgment reversed as to the appointment of a receiver, and affirmed as to the residue.