## BOHM v. BOHM.

1. Under the statute (Gen. Stats. sec. 2174), bills for relief on the ground of fraud must be filed within three years after the discovery, by the aggrieved party, of the facts constituting such fraud, and not afterwards.

2. Where the defendant alleged in her cross-complaint that she did not discover the fraud upon which she sought relief until within three years of the filing of the cross-complaint, the allegation standing unimpeached, the original transaction being between a mother and her son, and under other circumstances stated in the cross-complaint, *held*, on demurrer, that the case made by the cross-complaint was not barred by the statute of limitations.

3. Under the statute of frauds of this state the same evidence is necessary as under the statute of 29 Car. II., c. 3, to establish a trust.

4. The general rule is that a promise by a grantee to hold the land for the grantor, or to reconvey it to him, is in effect a declaration of trust and directly within the mischief which the statute of frauds was intended to prevent. The mere circumstance that a confidence has been violated is not sufficient to exclude the operation of the statute.

5. To exclude the operation of the statute on the ground of fraud, where an oral agreement is alleged as a foundation of the trust, it must appear that the promise was used as a means of imposition or deceit, and if the case, taken as a whole, is one of fraud, the promise may be received in evidence as one of the steps by which the fraud was accomplished.

6. The settled doctrine is that the statute of frauds does not apply to such a case, since the trust arises out of the fraud, and is consequently excepted from the operation of the statute. The same rule applies where a person, occupying a fiduciary relation to the owner of real estate, takes advantage of the confidence reposed in him by virtue of such relation to acquire an absolute conveyance without

consideration by verbal agreement, which he promises to reduce to writing.

7. Whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the party so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation had existed.

*Appeal from Superior Court of the City of Denver.*

THE plaintiff below, Mary Bohm, filed a complaint against the defendant, Magdalena Bohm, alleging the ownership and possession of plaintiff to twelve blocks of lots in Bohm's subdivision of the city of Denver. That she claimed title in fee thereto, but that said defendant claimed an estate or interest therein adverse to the title of the plaintiff. The complaint denies the validity of defendant's claim upon said premises, prays that she be required to set forth the nature of her claim, that plaintiff's title be adjudged valid, and that defendant be forever enjoined from asserting any claim of title to the said premises.

The answer and cross-complaint of Magdalena Bohm alleges ownership in fee by the defendant on the 4th day of January, 1878, of a tract of land embracing eighty acres, a parcel of which was and is the premises described and claimed by the plaintiff. That said tract of land was then incumbered by two deeds of trust executed to secure the aggregate sum of $3,000 and interest; that defendant was then, as now, a widow; that she was without means to remove the said incumbrances, and was, at the date aforesaid, induced to execute to her son, Charles Bohm, a deed of the entire tract of land in fee, in consideration of his promises, upon which she relied and acted, that he would, upon execution and delivery to him of such conveyance, execute and deliver to said defendant a written

declaration of trust, to the effect that she held an undivided one-third interest in said entire tract of land, free and clear of all liens and incumbrances, and in the proceeds thereof in case of sale.

One of the foregoing allegations is in the words following: "And the said Charles Bohm then and there, in consideration of such conveyance to him, and for the purpose of obtaining the legal title to said tract of land from the defendant herein, agreed with and promised the defendant that he would, upon the execution and delivery to him of said conveyance, execute and reduce to writing a declaration of trust," etc., setting out the verbal agreement; that in consideration of the two-thirds of said tract vesting in said Charles Bohm absolutely, by said deed, he promised that he would assume, pay and remove all liens from the said tract of land, and that upon demand he would execute and deliver to the defendant said one-third interest in said tract of land, free and clear of all liens and incumbrances.

Then follows an averment that said Charles Bohm, on the 15th day of December, 1883, executed to the plaintiff, Mary Bohm, a deed of the land in the complaint described, and of blocks one (1), two (2), three (3), four (4) and five (5), in Bohm's subdivision of the city of Denver, which is the only conveyance under which the plaintiff claims.

Following this is an averment that at the time of this conveyance plaintiff was the wife of the said Charles Bohm; that the conveyance was without consideration, and that before and at the time of said conveyance the plaintiff knew of the terms, conditions and promises upon which the conveyance from defendant to Charles Bohm was made; consequently the plaintiff took the conveyance burdened with the trust.

Defendant alleges that Charles Bohm, intending to cheat and defraud her out of her interest in said land, failed and refused to execute the declaration of trust, although defendant frequently demanded that he execute

the same within three years of the filing of the cross-complaint, and prior to the conveyance to the plaintiff; also that defendant frequently since said conveyance to the plaintiff demanded of the plaintiff a conveyance to her of an undivided one-third of said property, or a declaration of trust that the plaintiff held the undivided one-third interest in said land in the complaint described in trust for the defendant, which she always refused to make.

The death of the said Charles Bohm is averred. That since the land was conveyed to the deceased, deeds of trust upon the land have been executed; that the plaintiff has sold a large part of said entire tract of land, realizing therefrom the sum of $6,900, no part of which sum has been paid to the defendant, although defendant has demanded the one-third part thereof since the said sale.

The defendant, in the cross-bill, avers that the relations between her and the said Charles Bohm, now deceased, and between her and the plaintiff, Mary Bohm, were such as to quiet all suspicions as to any intention on the part of either the plaintiff or the said Charles Bohm to defraud her of any of her rights in the premises, and that it was not until about the time of the said conveyance from Charles Bohm to plaintiff (and within three years of the time of the filing of the amended cross-complaint), that either the said Charles Bohm or the plaintiff refused to execute the declaration of trust, or that she discovered that they or either of them intended not to execute such declaration, but to defraud her of her rights in the premises.

Said Magdalena Bohm avers that she is a widow, and is inexperienced in business matters. She always looked to and relied upon her said son to aid her in the transaction of her business, as one in whom she had a right to and could repose the utmost confidence.

The prayer of the cross-bill is that the plaintiff be declared to hold an undivided one-third interest in the par-

cels of land in the complaint described, free and clear of all liens and claims, in trust for the defendant. That plaintiff be ordered to convey to defendant by a good and sufficient deed a one-third interest in the entire parcels of land in the complaint described; that if there be any incumbrances on the land, as between the parties, such incumbrances be declared a lien on the two-thirds interest belonging to the plaintiff; and for judgment for the sum of $2,300, and that the same be declared a lien on the undivided two-thirds interest in the parcels of land described in the complaint.

Messrs. BARTELS, BLOOD and BROWN, for appellant.

Mr. JOHN L. JEROME, for appellee.

BECK, C. J. The questions presented by the demurrer to the cross-complaint are: 1. Do the averments of the cross-complaint bring the defendant's case within the twelfth section of the statute of limitations? 2. Do the facts and circumstances set forth in the cross-complaint constitute a cause of action — that is, do they take the case out of the statute of frauds, so as to permit parol proof of the verbal agreement alleged to have been entered into by and between Charles Bohm and his mother, Magdalena Bohm, at the time of the execution of the deed to the said Charles Bohm?

The first ground of demurrer is that the case presented by the cross-complaint is barred by the statute of limitations. The twelfth section of this statute is as follows:

" Bills for relief on the ground of fraud shall be filed within three years after the discovery, by the aggrieved party, of the facts constituting such fraud, and not afterwards." Gen. Stats. sec. 2174.

It is alleged in the demurrer that it appears by the cross-complaint that the failure to execute the declaration of trust occurred, if at all, and was known to the

d~fendant, more than three years prior to the filing of her cross-complaint.

This proposition implies that the failure to execute the declaration of trust was equivalent to notice, from the time of the execution of the deed, of a fraudulent intent to deny the existence of the trust.

When we consider the close family relationship of the parties — that of mother and son,—and the implicit confidence which the mother says she reposed in the good faith of her son, we can readily understand why the mere failure of the son to put the verbal contract into writ-ing might not, for a long time, excite the suspicion of the mother that he intended to defraud her out of her property.

The defendant alleges positively that she did not discover the fraud upon which she seeks relief, until within three years of the filing of her said cross-complaint, and this allegation, in our judgment, stands unimpeached.

Had the original transaction taken place between persons not occupying fiduciary relations to each other, the delay in seeking relief would afford strong grounds for holding that the action was barred (see *Pipe v. Smith*, 5 Colo. 146); but such is not the case here presented.   The defendant alleges that she was a widow, inexperienced in business matters, and that she always looked to and relied upon her son, as one in whom she had a right to and could repose the utmost confidence and trust to aid her in such matters; that the said plaintiff, Mary Bohm, was the wife of her said son, and that the relations existing between herself and the said parties were such as to quiet all suspicions of an intent on the part of either of them to defraud her of her rights in the said premises.

If these allegations be true, and for the purpose of testing the sufficiency of the cross-complaint the demurrer admits them to be true, there seems to be nothing unreasonable in the proposition that the defendant might reasonably rest in fancied security for five or six years after

making the contract described in the statement of the case, before discovering the fraudulent scheme which she charges, to wit, that her son designed to cheat her out of her property; she alleges that she did not discover such fraudulent intent until within three years of the filing of the amended cross-complaint. Under the peculiar circumstances stated, we are of opinion that the case comes within the provisions of the twelfth section of the statute of limitations, and is, therefore, not barred.

The next question is, whether the averments of the cross-complaint are sufficient to take the case out of the *statute of frauds,* and to permit the verbal agreement set up to be proved by parol evidence.

Section 6 of our statute of frauds provides that "no estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by deed or conveyance in writing subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing."

It is generally conceded that the statutes of frauds of the several states have not essentially changed the rules established by the English statute of 29 Car. II., c. 3, and that the same evidence is necessary to establish a trust under the former as under the latter. 1 Perry on Trusts, secs. 78, 263.

The first apparent difficulty presented by the case at bar is that the alleged trust is not in writing, as required by the statute. The grantee, it is said, promised to put the verbal agreement in writing, and, had he complied with the promise, the statute would have been satisfied and the rights of the grantor secured. But he failed and refused, after persuading the grantor to execute to him a conveyance of the fee, to put the terms and conditions of the verbal agreement in writing.

If, then, the circumstances set forth in the cross-bill are not sufficient to take the case out of the operation of the statute, the demurrer was properly sustained.

The general rule is that "a promise by a grantee to hold the land for the grantor, or to reconvey it to him, is in effect a declaration of trust, and directly within the mischief which the statute of frauds was intended to prevent. It cannot be taken out of the statute by calling the refusal to fulfill it a fraud. Such a refusal is not a fraud, unless the trust exists, and this is the very thing which the statute provides shall not be proved by parol." 2 Lead. Cases in Equity, part 1, p. 978; *Johnson v. La Motte*, 6 Rich. Eq. 347; Browne on Statute of Frauds, sec. 446.

Some authorities go a step further, and hold that the mere circumstance that a confidence has been violated is not sufficient to exclude the operation of the statute, the object of the legislature in requiring a writing to be signed by the party to be charged being to establish a rule which, though operating hardly in some instances, would in the long run conduce to certainty and prevent frauds. 2 Lead. Cases in Eq. p. 1013.

But cases occur which are recognized as exceptions to the general rules, and which are regarded as not coming within the operation of the statute. The elements usually distinguishing such cases from other cases are fraud, accident and mistake. In the absence of these elements the grantor in an absolute conveyance is prohibited by the statute of frauds from setting up and proving a parol agreement, that the grantee was to hold the land in trust for his benefit.

In order to exclude the operation of the statute on the ground of fraud, where an oral agreement is alleged as a foundation of the trust, the authorities hold that it must appear that the promise was used as a means of imposition or deceit, and if the case, taken as a whole, is one of fraud, the promise may be received in evidence as one of

the steps by which the fraud was accomplished.  2 Lead.
Cases in Eq. pp. 1013–1015; *Rasdall's Administrators v.
Rasdall*, 9 Wis. 384.

A verbal promise not based upon written evidence, to
hold land in trust for the benefit of the grantor, is within
the letter of the statute, and cannot be enforced.  Courts
of equity do not enforce mere verbal promises concern-
ing land.  It is accordingly held that a verbal promise to
hold the title to land for a certain specified purpose, as to
convey it to a designated individual, or to reconvey it
to the grantor, is not enforcible, unless the transaction
by means of which the ownership is obtained is fraudu-
lent, in which case equity will regard the person holding
the property as charged with a constructive trust, and
will compel him to fulfill it by conveying according to
his engagement.  2 Pom. Eq. Jur. secs. 1055, 1056.

The settled doctrine is that the statute of frauds does
not apply to such a case, since the trust arises out of the
fraud, and is consequently excepted from the operation
of the statute.  Id. note 1, and cases cited.

The same rule applies where a person occupying a fidu-
ciary relation to the owner of real estate takes advantage
of the confidence reposed in him by virtue of such rela-
tion to acquire an absolute conveyance thereof, without
consideration, through a verbal agreement, which he
promises to reduce to writing; as, for example, that the
land conveyed to him is to be held in trust for some legit-
imate purpose.  A refusal, under such circumstances, to
reduce the verbal agreement to writing, or to reconvey
the land to the real owner, is such an abuse of confi-
dence as to vest a court of equity with jurisdiction to
inquire thoroughly into the entire transaction, and to set
aside the conveyance, or administer other proper relief.
In 2 Pomeroy's Eq. Jur. p. 479, the doctrine is thus stated:
"Whenever two persons stand in such a relation that,
while it continues, confidence is necessarily reposed by
one, and the influence which naturally grows out of that

confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, *although the transaction could not have been impeached, if no such confidential relation had existed.*"

No illustration of the above rule can be stronger, than where an imposition has been practiced upon one party by the other, through confidence generated by the close ties of kindred — as that of parent and child. This is a relation in which the most implicit confidence is usually reposed in the good faith of each other, and, by reason of this intimate relation and confidence, the precautions which would usually be observed in other cases are often omitted, giving opportunities for the practice of imposition which would not be otherwise obtained. When children are of tender years, or inexperienced in matters of business, they may be thus imposed upon by their parents. Again, when the parents become aged, or in dependent circumstances, the situation of the parties becomes reversed, and the like imposition may be practiced, and advantage taken of them, by their children.

Applying the principles and rules above announced to the case before us, as the same is stated in the cross-complaint of the defendant, Magdalena Bohm, it would constitute the late Charles Bohm a trustee, *ex maleficio,* of the tract of land conveyed to him by his mother; for if the facts stated be true, he took advantage of his mother's confidence to obtain the title from her without consideration, by promises to remove the incumbrances, and then to reconvey to her an undivided third of the premises.

A title obtained under such circumstances, and by the violation of confidence inspired by a fiduciary relation of the character here alleged, ought not, according to the rules of equity and good conscience, to stand, but the

party obtaining such an inequitable advantage, or the party taking and holding under such party, with knowledge, or without consideration, should be decreed to hold it in trust, according to the verbal agreement under which it was obtained. ·

Upon this theory the plaintiff, Mary Bohm, occupies the same position previously occupied by her husband, as to the land conveyed to her, if, as alleged, she took such conveyance with knowledge of the circumstances under which the title was obtained from the defendant.

The case is one of peculiar hardship, as presented to us. Not only was a conveyance of land obtained by a son from his mother without consideration, upon the strength of fair promises made by him, and upon which the mother relied, but the cross-complaint sets up that this land embraced all the means which the mother possessed. This fact alone, in view of the existing relations, if clearly proven, would render the conveyance on its face unconscionable, and would justify the interference of a court of equity, to compel the party obtaining such advantage to do justice. Story's Eq. Jur. sec. 309a and note 1; 2 Pom. Eq. Jur. secs. 956–962; *Highberger v. Stiffler*, 21 Md. 338; *Comstock v. Comstock*, 57 Bar. 453.

The verbal agreement, as stated by the mother, appears to have been fair and reasonable, and had the son shown his good faith by reducing it to writing, as he promised to do, the mother may have been afforded a livelihood out of the unincumbered one-third portion of the premises, or out of the money arising from sales of her interest. The refusal, however, of the son and of the plaintiff, to either put the contract in writing, reconvey to the defendant, or account for the proceeds of sales, would appear to place the defendant in a much worse financial condition than that from which the son proposed to rescue her.

We deem this a case in which it becomes the duty of the court to inquire into the facts, investigate the whole

transaction, and if it appear that, by imposing upon the confidence so confided in him, the son succeeded in obtaining the title to his mother's property without consideration paid therefor, a decree for proper relief should be entered, if the same can be done consistent with the rules and principles of law and equity, under the change of circumstances and lapse of time.

The foregoing views are based upon the allegations of the cross-complaint, and the law arising thereon. We are aware that it is easier to state a cause of action than to prove the same. In cases of this character, where the cause of action would be barred by the statute of frauds but for equitable considerations arising out of the circumstances alleged, which permit a resort to parol evidence to establish the real contract, or the means by which the conveyance was obtained, the rule is that the evidence must be strong and unequivocal, and must clearly establish the trust alleged. *Whitesett v. Kershaw*, 4 Colo. 423; *Troll v. Carter*, 15 W. Va. 567; *Nelson v. Warrell*, 20 Iowa, 469.

In the present case, if the defendant's allegations are not sustained, but it should appear that the transaction was just and fair, and that no undue or fraudulent advantage was taken of the defendant, as alleged, the case presented by the cross-complaint must fail. But if the facts alleged in the cross-complaint are sustained by sufficient evidence, then the conveyance made by the defendant must either be set aside or the plaintiff decreed to hold the property as trustee for the said Magdalena Bohm. In the latter case, also, the requisite relief must be decreed as to the money realized by the plaintiff from sales of portions of said land, if any such were made, since they pertain to and constitute part of the same transaction.

Judgment reversed and cause remanded for further proceedings.

*Reversed.*