CHURCH ET AL., PLAINTIFFS IN ERROR, v. EGGLESTON ET AL., DEFENDANTS IN ERROR.

1. ADMINISTRATORS—COSTS.
Administrators are not chargeable with the costs incurred in a controversy between persons claiming to be distributees of the estate when there is nothing to show that they precipitated the contest, or in any way exceeded, in their official capacity, the limit of their duties.
2. COSTS IN EQUITY.
While the chancellor is allowed great discretion in adjudging costs, such discretion can only be exercised within well defined limits.

*Error to the District Court of Boulder County.*

IN January, 1887, John Leonard died a bachelor and intestate in the county of Boulder at an advanced age, probably born in 1812, consequently, was at the time of his death about seventy-five years old. He left property estimated at from $125,000 to $150,000. There resided in the immediate vicinity of his place of death two nephews, John and Henry Church, sons of his sister, Mary Church, who took out letters of administration on his estate.

John Leonard was the son of Edward and Elizabeth Leonard, who were married in Ireland, and had born to them before immigrating to America, William, probably born about 1804, Mary, afterwards Mrs. Church and mother of administrators, born about 1809, and John Leonard, born about 1812. In 1814 the family came to America and settled at Prescott, Canada. In the same year a daughter Ann was born, but whether in Ireland or America does not appear. She died at an early age, leaving no children. There was also born to the mother at some subsequent time, indefinitely determined, another son, Thomas Jefferson Leonard. At the time the testimony was taken in this case, 1888–9, Mrs. Church was the only living child, and she gave her age as seventy-nine.

William Leonard left one child, Mary, who became the wife of Orlando Bond.

Thomas J. Leonard died at Washington, D. C., in 1869, leaving two children, George H. Leonard and Mrs. Nellie Eggleston, petitioners in this proceeding.

Mrs. Mary Church, sister of John Leonard, was an heir, and it was conceded that the family of Orlando Bond, whose wife was the daughter of William Leonard, were entitled to share in the estate. This controversy arose as to the children of Thomas J. Leonard, the petitioners. Shortly after the death of John Leonard, Mrs. Mary Church asserted that Thomas J. was not her brother and the brother of John Leonard, but was the illegitimate son of her mother, Elizabeth, by an Irish tailor named Patrick Nolan, with whom her mother lived without marriage; that he, Thomas J., was born at some indefinite time and at some indefinite place some

years after the death of her husband, Edward Leonard. In the settlement of the estate by John and Henry Church, as administrators, the claims of the petitioners as distributees were disregarded. A petition was filed in the county court setting up the relationship and praying the recognition of the parties as heirs. The administrators, John and George Henry Church, answered, averring, on information and belief, that Mary Church, Amanda Wells, Anna Smith and Earl C. Bond, the three latter grandchildren of William Leonard, were the only heirs. A citation issued to the respective claimants, service was had by publication, Mary Church filed an answer identical with that filed by her sons, the administrators, except that it was not on information and belief, averring that she and the three grandchildren of William Leonard were the only heirs; that Thomas Leonard was not a brother of John Leonard, and that his children, the petitioners, were not heirs. Earl C. Bond, Mrs. Amanda Wells and Anna Smith answered, admitting that Thomas Leonard and John Leonard were brothers and that the petitioners were heirs of John Leonard. The issues were tried to a jury, resulting in the following verdict: "We, your jury, in answer to the question, 'Was Thomas J. Leonard the son of Edward Leonard by his wife, Elizabeth Leonard?' say, yes." From such finding an appeal was taken to the district court, where it was tried to Hon. John Campbell, judge, without a jury, resulting in the same finding as in the county court, from which error was prosecuted to this court.

Messrs. ROGERS, SHAFROTH & WALLING, for plaintiffs in error.

Mr. R. D. THOMPSON and Mr. T. M. PATTERSON, for defendants in error.

REED, J., delivered the opinion of the court.

No error of law is urged as ground of reversal; the sole

contention is that the judgment of the district court is not warranted by the evidence. But one question of fact was to be determined,—whether Thomas Jefferson Leonard was the son of Edward and Elizabeth Leonard and brother of John Leonard, deceased, George H. Leonard and Mrs. Eggleston, the petitioners, being son and daughter of Thomas. Thomas was alleged by respondents to have been born to Elizabeth out of wedlock long subsequent to the death of her husband, Edward. This claim was so ably urged, as being established by the evidence, that, contrary to the usual practice, this court has not only carefully examined the record, but the immense mass of evidence, mostly depositions, used upon the trial.

· The case was first ably and carefully tried to a jury in the county court, and a verdict found for the petitioners. The administrators took an appeal to the district court, where the case was again ably tried, resulting in the affirmance of the verdict of the jury. The learned judge of the district court, in an able opinion, reviews, analyzes and examines the entire evidence and finds that the petitioners, descendants of Thomas Leonard, were entitled to one third of the estate of John Leonard. That the Bonds, descendants of William Leonard, were entitled to one third and Mrs. Mary Church to one third.

We think the finding and decree were warranted by the evidence. The evidence is conflicting to a certain extent, but the evidence in support of the illegitimacy of Thomas Leonard is vague, undeterminate and inconclusive, based upon rumor, and dependent upon the memories, guesses and suppositions of extremely old people upon facts that occurred in their youth, and is very unsatisfactory, not sufficient to overcome the legal presumption of legitimacy. Besides, there are facts disclosed in regard to the manner in which it was obtained, which, if not sufficient to cause it to be rejected, are certainly sufficient to cast doubt and discredit upon it.

The finding of the district court as to the facts submitted

and the decree in regard to the distribution of the estate of John Leonard will be affirmed.

The costs of the litigation were, by the decree of the district court, to be taxed against the administrators. It is contended that this was erroneous. The plain inference from the language used is that they are not to be paid out of the estate nor out of any distributive portion of the estate, but by the administrators from their own resources.

If such is the construction, the decree is evidently erroneous. In this proceeding the administrators are to be regarded only in their official capacity as agents and trustees in the distribution of the estate. Their relation to the estate as sons of Mrs. Church is to be ignored and disregarded. They, as administrators, were legally bound to make a proper distribution to those entitled to share. The right of the children of Thomas to share in the estate was challenged by Mary Church. Until the contest was adjusted the administrators could make no settlement or distribution. There is nothing to show that they precipitated the contest, were responsible for it, or in any way exceeded in their official capacity the strict and honorable limit of their duties. If this view is correct, no reason exists for charging them with costs; the judgment against the administrators must be reversed. Nor should the costs be taxed against the estate as a whole—the Bond family were in no way responsible for it and should not be taxed. The family of Thomas Leonard were, when challenged, compelled to intervene, and, having been successful in establishing their right, no reason can be shown for assessing them with costs. The county court in the distribution of the estate will no doubt assess the costs correctly. The proceeding is purely in equity, and, while the chancellor is allowed great discretion in adjudging costs, such discretion can only be exercised within well defined limits. 2 Dan. Ch. Pl. & Prac. (4th ed.) 1376, 1377. " *Victus victori in expensis condemnatus est* " is the general rule in the court of chancery, as well as at law; it was also a maxim of the civil law. 2 Dan. Ch. Pl. & Prac. (4th ed.) 1381; *Vancouver v. Bliss*,

11 Ves. Jun. 458; *Staines v. Morris*, 1 Ves. & B. 8; *Milling-
ton v. Fox*, 3 Myl. & Cr. 388; *Saunders v. Frost*, 5 Pick.
(Mass.) 508; *Clark v. Reed*, 11 Pick. 446; *Lee v. Pindle*, 12
Gill & J. (Md.) 288; *Tomlinson v. Ward*, 2 Conn. 396.

We can see nothing in this case to take it out of the gen-
eral and well settled rule. The decree of the district court
in finding the petitioners entitled in the distribution to one
third of the estate of John Leonard will be affirmed. That
part of the decree charging the administrators with costs will
be reversed. The cause will be remanded to the district court
of Boulder county.

*Affirmed, except as to costs.*