## No. 14,040.

ESTATE OF DOERFER.

HILDEBRAND *v.* ROLF ET AL.

(67 P. [2d] 492)

Decided April 12, 1937.

Mr. JOEL E. STONE, Mr. A. M. KIME, Mr. JOHN L. ZANONI, for plaintiff in error.

Mr. HORATIO S. RAMSEY, Mr. HAROLD F. COLLINS, Mr. GRANT E. McGEE, for defendants in error.

*In Department.*

MR. JUSTICE KNOUS delivered the opinion of the court.

JACOB Doerfer and Joseph Doerfer were bachelor brothers, having no blood relatives of closer relationship than nieces and nephews. They were residents of Arapahoe county and had accumulated a considerable amount of property through their joint activities. In 1932, at which time they were past seventy years of age, the two brothers went to the office of Flor Ashbaugh, an attorney at law

in Littleton, Colorado, and talked to him concerning a testamentary disposition of their property. They desired an arrangement whereby the survivor of the two would have the full use and enjoyment of the property of both during the survivor's lifetime, and upon his death the entire property belonging to both should go to their nieces and nephews. Mr. Ashbaugh discouraged the creation of the proposed life estate, whereupon the brothers decided to make absolute wills to each other with the understanding that the survivor was to make a will in which all of the property belonging to the brothers would be willed to their nieces and nephews. On the 5th of July, 1932, the two absolute wills were prepared and executed under which each brother willed all of his property to the other brother. In June, 1933, Joseph Doerfer died and his will was presented to the county court of Arapahoe county for probate. Mr. Ashbaugh, the attorney who prepared the original wills, appeared for Jacob Doerfer in the probate of the will and in connection therewith sent citations to the heirs, the nieces and nephews mentioned, requesting them to waive service. In the letter of transmittal, which was read and approved by Jacob Doerfer, among other things, it was said:

"In further explanation of this case, I wish to say that when this will was made, your Uncle Jake and Uncle Joe came to my office and each made a similar will. It was talked over and agreed to between them that upon the death of one of them, the survivor would make a will wherein all of the heirs would inherit the estate of the survivor upon his death."

The will of Joseph Doerfer in due course was admitted to probate and subsequently under its terms Jacob Doerfer secured all of the property of Joseph.

It would appear that sometime after Joseph's death Jacob became closely associated with one Dorothy Hildebrand, a young woman of about 25 years of age, who is the proponent of the will involved in this proceeding and to whom Jacob Doerfer therein refers "as my constant friend and companion." It would appear from the testi-

mony that after Miss Hildebrand's advent into the picture, Jacob was less interested in the oral agreement made with his brother but seemingly was still conscious of its binding force, as is evidenced by his deceitful dealings with Mr. Ashbaugh, the attorney who knew of the arrangement between the brothers. As a means of convincing Mr. Ashbaugh that he still intended to carry out the agreement, Jacob had Mr. Ashbaugh prepare an assignment of some personal property to some one or more of the nieces and also had him prepare the deed for some of his real property to another of his natural heirs. These instruments were executed with due formality and delivered to Jacob, who left the papers in his effects in his home, where they were discovered after his death, the deed with his signature deleted. During this period Jacob also spoke to Mr. Ashbaugh with reference to the preparation of the will contemplated in the agreement with his brother but deferred actually coming to Mr. Ashbaugh's office for this purpose. On July 19, 1935, Jacob went to an attorney whom he was sure had no knowledge of his agreement with Joseph and, after transferring a large share of his estate to Dorothy Hildebrand by deed, executed a will in which he made bequests of $250 to his nephew Louis Doerfer and his niece Gertrude D. Rolf, and left the entire residue of the estate estimated to be worth about $8,000 to Dorothy Hildebrand who was also therein designated as executrix without bond. The plaintiff in error, Miss Hildebrand, to whom we shall hereafter refer as proponent, in due course presented this will for probate in the county court of Arapahoe county. Defendants in error here, to whom we shall hereafter refer as caveators, claiming to be the sole and only heirs at law of Jacob Doerfer, filed a caveat under the provisions of section 5211, C. L. 1921 ('35 C. S. A., p. 1632, c. 176, §63), contesting said will and objecting to the probate thereof. After a hearing before the county court the will was admitted for probate and the caveators appealed to the district court where they filed an amended caveat.

The amended caveat, upon which the case was tried in the district court, challenged the validity of the will upon the grounds that it was not executed in the manner required by law; that the testator did not have the mental capacity necessary to make a valid will; that the instrument presented for probate was the result of undue influence of the proponent; that the alleged will was void because it provides for a disposition of his property contrary to and in violation of the agreement made between Joseph Doerfer and Jacob Doerfer above referred to; alleges that said agreement was partially performed by the execution of reciprocal wills by Joseph and Jacob Doerfer, and by the passing of Joseph Doerfer's property to Jacob Doerfer by the will of the former; and further alleges a contract between Jacob Doerfer and the caveators whereby he agreed that the caveators would inherit the remaining property of Joseph and Jacob Doerfer if they would not contest the probate of the will of Joseph Doerfer which left the latter's estate to Jacob. After introduction of the caveators' testimony, the court, on its own motion, because of insufficiency of evidence on certain of these issues, took from the jury all of the objections raised by the caveators, except two, the consideration of these being the issue based upon the alleged undue influence by the proponent, and the objection based upon the alleged contract between Joseph and Jacob Doerfer whereby the survivor was to leave all the property remaining at his death to the caveators. On the issue of undue influence the jury found in favor of the proponent but returned a verdict in favor of the caveators on the issue of the contract and determined that the agreement alleged in the caveat between Jacob and Joseph was made and partially performed. On the basis of the latter finding the court declared the will void and ordered that the estate should be administered as an intestate estate.

Both parties have asked that this cause be finally disposed of upon the plaintiff in error's application for supersedeas. It is our opinion, as the trial court con-

cluded, that the pact between the two brothers, with reference to the disposition of their property by the survivor, the coincidental making of their mutual wills and the fact that Jacob Doerfer received and accepted the property of Joseph through his will, impressed all of the property of which Joseph died seized and possessed, with a constructive trust which then became operative by law by reason of his fraud in attempting to will to the proponent the bulk of the estate, contrary to the partly executed agreement which the jury found existed between himself and his brother. We mention this conclusion at this point in the opinion since it disposes of the contention of the proponent that the parol arrangement made between the brothers comes within the inhibition of the statute of frauds C. L. '21, §5105 ('35 C. S. A., p. 356, c. 71, §6), since under the next section 5106, C. L., it is provided that: "The preceding section shall not be construed to affect in any manner the power of the testator in the disposition of his real estate by a last will and testament, nor to prevent any trust from arising or being extinguished by implication or operation of law."

Obviously this type of case is thereby removed from the operation of the statute of frauds. Under the verdict of the jury, approved by the trial court, to hold otherwise would violate the well-known axiom, that the statute of frauds shall not be permitted to be an instrument of fraud. This rule is almost universal. In *Walker v. Bruce,* 44 Colo. 109 (97 Pac. 250), this court, at page 117, said: "Constructive trusts are such as are raised by equity in respect to property which has been acquired by fraud; or where, although acquired without fraud, it is against equity that it should be retained by him who holds the legal title. Washburn on Real Property, §1430. Resulting trusts are not within the statute of frauds, and may be shown by parol testimony. *Knox v. McFarran,* 4 Colo. 586; *Kayser v. Maugham,* 8 Colo. 232 (6 Pac. 803); *Bohm v. Bohm,* 9 Colo. 100 (10 Pac. 790); *Warren v. Adams,* 19 Colo. 515 (36 Pac. 604)."

The principle involved is well set forth in the case of *Meador v. Manlove,* 97 Kan. 706, 156 Pac. 731, 733, in the following language: "The gist of all these cases is that where an oral contract concerns interests in land which would ordinarily be invalid under the statute of frauds or the statute of trusts and powers has been performed by one of the parties, equity will give effect to the contract. This is sometimes done on the theory that the other party is equitably estopped to plead these statutes. Sometimes it is done by impressing the property which was the subject matter of the contract with a trust 'by implication of law' in favor of the party who had performed his part of the contract. Sometimes the trust has been impressed in favor of third parties—those for whose benefit the contract was made."

And at page 714: "With the aid of the briefs of counsel and our own studies we have examined many cases analogous to the one at bar where oral agreements to make wills have been enforced, usually as done here by recognizing the technical legality of the mere naked title vested by wills or conveyances made in violation of such agreements, but declaring such title holders to be mere trustees for the parties equitably entitled to the property. Such trusts are termed constructive trusts, trusts ex maleficio, trusts by implication of law, involuntary trusts, trusts ex delicto, and the like. To extend this opinion by citations would merely be to repeat what was so well set forth by the late Mr. Justice Graves of this court in *Gemmel v. Fletcher,* 76 Kan. 577, 92 Pac. 713. See *Ransdel v. Moore,* 153 Ind. 393, 53 N. E. 767, 53 L. R. A. 753, where the leading cases of England and America are collated and discussed. (See, also, notes in 8 L. R. A. (N. S.), 698; 31 L. R. A. (N. S.) 176; 33 L. R. A. (N. S.) 996; also note in 106 Am. St. Rep. 95."

In addition to the reason we have assigned, we believe it likely that the agreement between the two brothers is removed from the operation of the statute by the execution of their identical wills, coupled with Mr. Ashbaugh's letter transmitting citations to the heirs preceding the

probate of the will of Joseph Doerfer, a portion of which we have hereinabove set out, and the acceptance by Jacob Doerfer, the surviving party to the agreement, of the benefits accruing to him by virtue of the mutual arrangement culminating in the execution of the will by Joseph.

In *Brown v. Johanson,* 69 Colo. 400, 194 Pac. 943, a case in which separate mutual wills were involved, the court, at page 403 said:

"Neither of the wills used the word 'contract' or 'consideration.' Neither had any direct reference to the other, or to any previous agreement for their execution. Under such circumstances defendants contend that they cannot be construed together and interpreted into a contract and the execution of one be held the consideration for the execution of the other. With this contention we are unable to agree.

" 'Where mutual or reciprocal wills have been made pursuant to an agreement which has been executed by one of the testators dying without having made any different testamentary disposition of his property and the other has accepted the benefits accruing to him under the will of the deceased, the agreement becomes obligatory upon the survivor and may be enforced in equity against his estate.' Alexander on Wills, vol. 1, §88. *Brown v. Webster, et al.,* 90 Neb. 591, 134 N. W. 185, 37 L. R. A. (N. S.) 1196."

Section 5211, C. L., supra, defining the procedure in will contests, segregates the objections which can be made to the validity of the wills into two classes: first, those pertaining to the issue as to whether the will filed for probate is the last will of the testator; and, second, those relating to the legality of the contents of the will submitted. In the case at bar the caveators plead all of these objections of both classes in a series of consecutively numbered paragraphs. The contract or arrangement between the two brothers, a class second objection under which the will was declared void by the court, is set out in what the proponent has designated in

the assignment of errors as the second paragraph and cause of action of the amended caveat. The proponent contends that her demurrer to this second paragraph was erroneously overruled by the trial court. The proponent's theory seems to be that to comply with section 5211, supra, where objections to the will come within both the classes therein enumerated, a caveator must set out these objections in two separate and distinct causes of action, complete in themselves, and that the second paragraph of this caveat alleging objections to the legality of the contents of the will, is insufficient because it does not have the completeness of an entire caveat. We cannot agree with this contention. Where the caveat makes all of the formal allegations which are required by section 5211, supra, by alleging objections of the first class, as is the situation here, we do not see why there can be any object in requiring the pleader to reaffirm, by reference or otherwise, these formal matters, to properly plead the objections of the second class. While the second paragraph of the caveat, standing alone, would not meet the requirements of section 5211, supra, the caveat as a whole sufficiently does, and the demurrer was properly overruled. Neither do we believe that in pleading objections of the second class under section 5211, supra, it is necessary for the pleader to allege in the caveat that he is without adequate remedy at law or to set out the other general allegations which are ordinarily required in original pleadings where equitable relief is sought. While certain provisions in section 5211, supra, may be said to grant equitable powers to a court, this authority is given to the court by the statute and not by the character of the pleadings.

██ ██ The proponent assigns error on the ground . that the issue of the alleged agreement and its partial performance, an objection of the second class, was submitted to the jury rather than heard and determined by the court, as required by section 5211, supra. Whatever may be the merits of this contention, the proponent has

waived any right to object thereto by her failure to object in any manner whatsoever to the submission of this question to the jury in the trial below. Further, the objection was not presented to the lower court in the motion for new trial and under our Rule 8 its consideration here is precluded. The proponent also here asserts for the first time, so far as the record discloses, the theory that the trial court erred in declaring the entire will of Jacob Doerfer void because of the fact, as proponent claims, that the bequests to the nephew and niece of $250 each therein contained, are valid as going to the class contemplated by the agreement between the two brothers.

For the reason we have just assigned, this proposition cannot be considered here. We might pass without comment the two points last mentioned and which are not properly before us, were it not for the fact that we desire to stress the necessity of litigants confining themselves to the issues and objections made in the trial court. In the case at bar the counsel who apparently took the principal part in preparing the briefs for proponent, did not participate in the trial of the case and has injected into his argument numerous ingenious and plausible theories and questions which were not advanced or suggested during the trial below. Had these matters been presented to the trial court it is probable a different situation would be presented by the record but, as we have repeatedly said, we must pass upon the cases brought here upon the basis of the record and proceedings in the trial court.

The proponent also asserts that the evidence was insufficient to show the existence of the partially performed contract between the brothers as determined by the jury. The trial court in overruling the motion for new trial after extensive argument on the subject, in effect, stated that the evidence on this question was clear, convincing and uncontradicted to the extent that had the court so desired it would have been justified in taking the question from the jury and directing a verdict upon this issue in favor of the caveators. After an examination

of the record we are not disposed to disagree with the conclusion of the trial court and jury.

The proponent also assigns error to the action of the trial court in decreeing that the proponent pay the costs in this proceeding. The plaintiff in error in this proceeding was the unsuccessful proponent of the will and, being the losing party, the court properly taxed the costs against her. This, of course, does not preclude her from applying to the county court through the ordinary procedure provided for the presentation of claims against the estate of a deceased person and there having her claim determined by the county court in accordance with section 5220, C. L. 1921 ('35 C. S. A., p. 1639, c. 176, §72). In the case of *Williams v. Hankins,* 79 Colo. 237, 245 Pac. 483, principally relied upon by the proponent as authority for the proposition that the costs were improperly taxed, the procedure we have indicated was followed. Involved in that proceeding were the costs which had been taxed against Hankins in another case (*Williams v. Hankins,* 75 Colo. 136, 225 Pac. 243), in which he was the unsuccessful proponent of a will. He thereafter filed a claim against the estate of the decedent in the county court and the matter came here on the judgment allowing the claim. In the other Colorado case relied upon by the proponent, *Church v. Eggleston,* 3 Colo. App. 239, 32 Pac. 984, the costs were taxed against the administrators of an estate who were parties to the proceeding before the court in their *official capacity* as distinguished from the individual capacity in which proponent appears here. On the ground mentioned, the judgment of the trial court so assessing the costs was reversed, but in so doing the Court of Appeals clearly indicated that the ultimate allowance and taxing of the costs would be a matter for the county court.

The judgment of the district court is, therefore, affirmed.

Mr. Chief Justice Burke and Mr. Justice Holland concur.