Joseph A. KIELY, as Interim Trustee in Bankruptcy for the Estate of William Boshouwers, and Boshouwers Color Laboratory, Inc., a Colorado corporation, Petitioners,

v.

Joel F. ST. GERMAIN, Respondent.

No. 82SC145.

Supreme Court of Colorado,
En Banc.

Oct. 11, 1983.

---

Law & Scheid, P.C., Patricia Jo Stone, Denver, for petitioner Kiely.

No appearance for petitioner Boshouwers Color Laboratory, Inc.

Myers, Woodford & Hoppin, P.C., Frederick J. Myers, Denver, for respondent.

KIRSHBAUM, Justice.

In *St. Germain v. Boshouwers*, 646 P.2d 952 (Colo.App.1982), the Colorado Court of Appeals affirmed the trial court's judgment awarding damages of $9,500 to Joel F. St. Germain against defendants William B. Boshouwers and Boshouwers Color Laboratory, Inc.,[1] and reversed the trial court's denial of plaintiff's claim of additional damages of $25,000. We granted defendant's

---

1. During the pendency of this certiorari proceeding, Joseph A. Kiely, Interim Trustee in Bankruptcy for the Estate of William Boshouwers, was substituted as a petitioner.

petition for writ of certiorari, and now affirm in part and reverse in part.

The record supports the following pertinent findings of fact entered by the trial court and substantially adopted by the Court of Appeals. In October 1978, St. Germain and Boshouwers began discussing the possibility of St. Germain's joining the color film processing business then operated by Boshouwers and his wife. At that time, St. Germain had been employed by the Public Service Company of Colorado for approximately twelve years.

On December 8, 1978, St. Germain and Boshouwers visited the office of St. Germain's lawyer. In response to questions by the attorney, both parties stated that they had reached an agreement on all major terms of a new business venture. Those terms included the provision that, commencing January 22, 1979, St. Germain would receive a salary of $1,500 per month for six months, which salary was guaranteed by the corporation, and that Boshouwers, who owned all of the 100 issued and outstanding shares of the corporation's stock, would sell forty-nine of those shares to St. Germain for $25,000.

St. Germain's attorney then drafted a document containing these and the other provisions of what both parties assured him was a "firm deal." Neither St. Germain nor Boshouwers executed the document then; however, at the conclusion of the meeting Boshouwers made the following statement: "Well, now we have a deal and you can go tell your employer . . . that you are leaving." St. Germain terminated his employment with Public Service Company later that same day.

St. Germain then obtained a second mortgage on his residence in the amount of $25,000, took a prearranged vacation with his family, and, on January 17, 1979, tendered a document[2] containing the terms of the December 8, 1978, oral agreement to Boshouwers for signature. At that point Boshouwers refused to sign the document, denied that the parties had an oral agreement, and asked St. Germain to become an employee of the corporation at a salary of $250 per week. St. Germain refused this proposal and, despite efforts to enter other business enterprises, was unable to generate any income until June 6, 1979. This civil action ensued.

St. Germain's complaint sought damages on claims of breach of oral contract or, alternatively, promissory estoppel. Among the affirmative defenses raised by the defendants was the assertion that the statute of frauds provision of the Uniform Commercial Code, section 4–8–319, C.R.S.1973, rendered unenforceable any oral agreement between the parties concerning the sale of the corporate stock. The trial court concluded that St. Germain was entitled to lost wages and legal services costs totaling $9,509 on the basis of promissory estoppel. The trial court also held that section 4–8–319 barred his claim for lost profits relating to the purchase of the corporate stock.

Defendants appealed the former ruling, and St. Germain cross-appealed the latter determination. The Court of Appeals affirmed the trial court's award of damages for lost wages and cost of legal services. Concluding that the statute of frauds did not bar St. Germain's promissory estoppel claim relating to the purchase of the corporate securities, the Court of Appeals held that St. Germain was entitled to damages for lost profits in the amount of $25,000.[3] We granted certiorari to consider defend-

---

**2.** The trial court described the December 8, 1978, document as a "final draft"; the Court of Appeals termed it a "rough draft." The trial court also found that the parties' agreement was not "reduced to writing until January 15, 16 or 17, 1979." Nomenclature notwithstanding, no document was ever executed by the parties.

**3.** The trial court initially entered judgment for St. Germain for this amount, based on its find-ing of fact that the 49 shares of corporate stock were worth $50,000 on January 22, 1979, and its conclusion that St. Germain was entitled to the lost profits of $25,000. However, after considering defendants' motion for new trial, the trial court ruled that St. Germain's claim for lost profits arose from an alleged oral agreement to sell securities and, therefore, was barred by § 4–8–319.

ant's assertions that the doctrine of promissory estoppel may not be evoked to enforce an alleged oral agreement in the face of a statute of frauds defense, and that no award of damages for lost profits is warranted in this case.

The doctrine of "promissory estoppel," as articulated in section 90 of the *Restatement of Contracts* is part of the common law of Colorado. *Vigoda v. Denver Urban Renewal Authority,* 646 P.2d 900 (Colo.1982); *Mooney v. Craddock,* 35 Colo.App. 20, 530 P.2d 1302 (1974). That section, entitled "Promise Reasonably Inducing Definite and Substantial Action," states as follows:

> "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

The doctrine has since been restated in section 90(1) of the *Restatement (Second) of Contracts,* as follows:

> "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. *The remedy granted for breach may be limited as justice requires."* (emphasis added)

■ This revised statement, the language of which was not argued to the trial court or to the Court of Appeals, recognizes the force of the principle that in some circumstances the interests of justice will best be served by partial rather than total enforcement of the promise. *See, e.g.,* Fuller & Perdue, *The Reliance Interest in Contract Damages: 1,* 46 Yale L.J. 52 (1936). We agree that any remedial order in cases involving claims based on promissory estoppel must be fashioned carefully to achieve fairness to all parties in the circumstances of the particular case. Hence, we adopt the principles articulated by section 90(1) of the *Restatement (Second) of Contracts.*

■ The doctrine of promissory estoppel encourages fair dealing in business relationships and discourages conduct which unreasonably causes foreseeable economic loss because of action or inaction induced by a specific promise. Justifiable reliance on the representations of another is the gist of this action. *Vigoda v. Denver Urban Renewal Authority, supra; Mooney v. Craddock, supra.* The doctrine represents, in part, a modest extension of the basic contract principle that one who makes promises must be required to keep them. *See* Henderson, *Promissory Estoppel and Traditional Contract Doctrine,* 78 Yale L.J. 343 (1969).

■ However, promissory estoppel is not defined totally in terms of contract principles. The recognition that justifiable reliance resulting in a reasonable and foreseeable detrimental change of position will support an award of compensatory damages is also grounded upon principles of fair dealing familiar to equity jurisprudence. *See Vigoda v. Denver Urban Renewal Authority, supra;* 1A A. Corbin, *Contracts* § 204 (1963). *See also Restatement (Second) of Contracts* § 90 comment a (1981); *C & K Engineering Contractors v. Amber Steel Co., Inc.,* 23 Cal.3d 1, 587 P.2d 1136, 151 Cal.Rptr. 323 (1978). It is often appropriate when parties have not mutually agreed on all the essential terms of a proposed transaction. *See, e.g., Hoffman v. Red Owl Stores, Inc.,* 26 Wis.2d 683, 133 N.W.2d 267 (1965). Contrary to defendant's argument, fraudulent conduct by the promissor is not an element of promissory estoppel. Other civil remedies and criminal sanctions are available to deter fraudulent conduct. When injustice to a promisee who reasonably and justifiably relies on a promise can be prevented only by recognizing a right of recovery from the promissor, neither the lack of a written contract nor the absence of fraudulent conduct can defeat the claim for recompense.

■ As the Court of Appeals noted in its opinion, the trial court's conclusion that St. Germain has established all the elements of promissory estoppel is amply supported by the record. The trial court's award of

damages for lost wages and costs of legal services was appropriate. We also agree with the conclusion of the Court of Appeals that section 4–8–319 does not constitute a bar to St. Germain's claim for damages based on the promise to sell forty-nine shares of the corporation's stock.

The policies furthered by any statute of frauds find their origins in the "Act for Prevention of Frauds and Perjuries," adopted by England's Parliament in 1677. 29 Car. 2, c. 3 (1677).[4] The act represented a forceful effort to prevent the perpetration of fraud by the device of perjury. 6 W. Holdsworth, *A History of English Law* 379–97 (1924). Almost all American legislatures have enacted statutes containing language substantially similar to portions of England's original act.

However laudable the goals of such legislation might be, courts concerned about the inequitable results invariably produced in some circumstances by strict application of statute of frauds provisions almost immediately began to develop such doctrines as equitable estoppel and part performance to prevent the defense from becoming itself a means to perpetrate fraud. *See* Summers, *The Doctrine of Estoppel Applied to the Statute of Frauds,* 79 U.Pa.L.Rev. 440 (1931); Note, *Statute of Frauds—The Doctrine of Equitable Estoppel and the Statute of Frauds,* 66 Mich.L.Rev. 170 (1967). The doctrine of promissory estoppel is but one of the principles developed by the courts to prevent parties from employing the statute of frauds to defeat just claims. Note, *Promissory Estoppel as a Means of Defeating the Statute of Frauds,* 44 Fordham L.Rev. 114 (1975).

Although the doctrine of promissory estoppel is based in part upon the premise that statute of frauds provisions need not defeat meritorious claims for enforcement of oral promises, the results are far from uniform in cases wherein a claim based on promissory estoppel is challenged by a defense based squarely on the provisions of a particular statute of frauds. Some jurisdictions suggest that in such circumstances the absence of compliance with statute of frauds requirements invariably will result in the defeat of the promissory estoppel claim. *See Ivey's Plumbing & Electric Co., Inc. v. Petrochem Maintenance, Inc.,* 463 F.Supp. 543 (N.D.Miss.1978) (applying Mississippi law); *Tanenbaum v. Biscayne Osteopathic Hospital, Inc.,* 190 So.2d 777 (Fla. 1966); *Dooley v. Lachut,* 103 R.I. 21, 234 A.2d 366 (1967). Other jurisdictions have permitted recovery on the promissory estoppel claim when the evidence establishes that the defendant relying on the statute of frauds defense orally agreed to reduce the operative promise to writing. *Tiffany Inc. v. W.M.K. Transit Mix, Inc.,* 16 Ariz.App. 415, 493 P.2d 1220 (1972); *Chapman v. Bomann,* 381 A.2d 1123 (Me.1978); *Vogel v. Shaw,* 42 Wyo. 333, 294 P. 687 (1930). *See Restatement of Contracts* § 178 comment f (1932).[5]

The majority of jurisdictions faced with resolving a confrontation between promissory estoppel claims and statute of frauds defenses have adopted a more flexible, albeit a more complex, approach. The courts in those jurisdictions are required to examine the policies furthered by the doctrine of promissory estoppel and by the particular statute of frauds in the total context of the case and to render a decision which is basically fair to all the parties. *See Janke Construction Co., Inc. v. Vulcan Materials Co.,* 386 F.Supp. 687 (W.D.Wis.1974), *aff'd,* 527 F.2d 772 (7th Cir.1976) (applying Wisconsin law); *Crail v. Blakely,* 8 Cal.3d 744, 505 P.2d 1027, 106 Cal.Rptr. 187 (1973); *McIntosh v. Murphy,* 52 Hawaii 29, 469 P.2d 177 (1970); *Walker v. Ireton,* 221 Kan. 314,

---

**4.** Due in part to England's adoption of the Gregorian calendar in 1751, some confusion developed over the year in which Parliament enacted the statute. It is generally accepted that the date of enactment was April 16, 1677. *See Costigan, The Date and Authorship of the Statute of Frauds,* 26 Harv.L.Rev. 329 (1913).

**5.** While comment f has no counterpart in the *Restatement (Second) of Contracts,* the comment to new § 110, the successor of § 178 of the *Restatement of Contracts,* refers in part to new § 139. *See* Knapp, *Reliance in the Revised Restatement: The Proliferation of Promissory Estoppel,* 81 Colum.L.Rev. 52, 68 (1981).

559 P.2d 340 (1977); *Babey v. Lowman,* 7 Ohio App.2d 38, 218 N.E.2d 626 (1966); *Remilong v. Crolla,* 576 P.2d 461 (Wyo.1978). The effort to compare the strengths of the doctrine and of the statute in particular cases gives maximum recognition to the central policy furthered by each—preventing unjust results when parties deal with each other by means of oral rather than written communication.

In response to judicial development of the doctrine of promissory estoppel, the American Law Institute in 1979 adopted a new section articulating principles directly applicable to the promissory estoppel claim/statute of frauds defense quagmire. Section 139 of the *Restatement (Second) of Contracts* states as follows:

"§ 139 Enforcement by Virtue of Action in Reliance

(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

(2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant:

(a) the availability and adequacy of other remedies, particularly cancellation and restitution;

(b) the definite and substantial character of the action or forbearance in relation to the remedy sought;

(c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;

(d) the reasonableness of the action or forbearance;

(e) the extent to which the action or forbearance was foreseeable by the promisor."

In essence, section 139 provides the equitable balancing test utilized by the majority of jurisdictions. This court has previously recognized that a plaintiff's full or partial performance of an oral agreement, when done in reasonably justifiable reliance thereon, is sufficient to overcome a statute of frauds defense. *Sackett v. Rodeck,* 75 Colo. 425, 226 P. 295 (1924). *See also In re Estate of Doerfer,* 100 Colo. 304, 67 P.2d 492 (1937) (court recognizes "that the statute of frauds shall not be permitted to be an instrument of fraud"). Thus, the principle embodied in section 139 of the *Restatement (Second) of Contracts* that detrimental action performed in justifiable reliance upon oral promises may be sufficient to compel full or partial performance of the promise in spite of the applicability of a statute of frauds defense is but a slight extension of the principles well settled in Colorado. Thus, we conclude that the Court of Appeals correctly concluded that section 139 of the *Restatement (Second) of Contracts* is applicable to this case.

The statute of frauds relied on by defendants, section 4–8–319, C.R.S.1973, states in pertinent part as follows:

"A contract for the sale of securities is not enforceable ... unless: (a) There is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price...."

The statute, a part of the Uniform Commercial Code (the Code), is designed to ensure certainty in the sale and purchase of securities. It prohibits the sale of or purchase of this type of asset in the absence of a complete written agreement concerning the essential terms of such transaction. However, section 4–1–103, C.R.S.1973, contains the following provision concerning construction of other provisions of the Code:

"Unless displaced by the particular provisions of this title, the principles of law and equity, including ... the law relative

to ... estoppel ... shall supplement its provisions."

This recognition that general principles of estoppel should be considered in applying the provisions of the Code indicates a strong legislative concern that the statute not be utilized to perpetrate a fraud or to achieve inequitable results in particular cases. Section 4–8–319 contains no indication that transactions involving the sale of securities are exempt from the general caveat of section 4–1–103. Thus, this particular statute of frauds may be "supplemented" by the doctrine of promissory estoppel—a virtual requirement that courts utilize a balancing test to prevent use of the statute to effect inequitable results.

The trial court has not had an opportunity to analyze the merits of St. Germain's claim for "lost profits" under the principles enunciated in section 139 of the *Restatement (Second) of Contracts*. It must be permitted to do so in light of the evidence adduced at trial or in light of any additional evidence it might in its discretion permit to be presented on the matter.

Accordingly, the decision of the Court of Appeals is affirmed insofar as it affirms the trial court's award of damages consisting of lost wages and legal services costs. The decision is reversed insofar as it awards St. Germain damages for lost profits, and the matter is remanded to the Court of Appeals with instructions to remand the cause to the trial court for a determination of the appropriateness of an award of lost profits under section 139 of the *Restatement (Second) of Contracts* in the circumstances of this case.