Ronald C. CALHOUN, Plaintiff,

v.

BALL CORPORATION, Defendant.

Civ. A. No. 92–B–2283.

United States District Court,
D. Colorado.

Oct. 13, 1994.

Andrew T. Brake and Lee Judd, Andrew T. Brake, P.C., Denver, CO, for plaintiff.

Charles W. Newcom, Sherman & Howard, Denver, CO, and Hillary E. Johnson, Ball Corp., Broomfield, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendant Ball Corporation (Ball) moves for summary judgment upon all of plaintiff Ronald C. Calhoun's (Calhoun) claims. After consideration of the motion, briefs, and oral argument, I grant the motion in part and deny it in part.

In 1985, Calhoun, a black male, worked at Ball Corporation for several months on a contract basis as a job shopper through a temporary agency. In January, 1990, Calhoun applied for a position with Ball. During the interview process, Calhoun expressed a desire to be employed as a design engineer. However, Calhoun was offered and accepted a position as a designer. In April, 1990, Calhoun received an overall performance review rating of satisfactory. Over the next year, although the quality of Calhoun's work performance is in dispute, it is undisputed that by April, 1991 the employment relationship had deteriorated and in April, 1991 Calhoun filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC). He filed a second charge in October, 1992. In April, 1991, Calhoun received an unsatisfactory work performance evaluation. It is undisputed that on August 6, 1992, Calhoun was terminated from Ball.

Calhoun claims that Ball failed to promote him and ultimately fired him for racially discriminatory reasons and in retaliation for filing EEOC claims thus violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and U.S.C. § 1988. Calhoun also seeks relief pursuant to state law claims of breach of contract and estoppel.

This action originally consisted of two separate suits which I consolidated into one case on August 19, 1993. The case was set initially for trial to jury on May 2, 1994. Neither side filed dispositive motions. A few weeks before trial, Ball moved to continue the trial, reopen discovery, and allow an amended answer having just learned that on the day

Calhoun cleaned out his work area and left Ball, he had taken from his employer without permission, more than 5,200 work related documents. On July 15, 1994, Ball filed a motion for summary judgment based on the "after acquired evidence" defense outlined in *Summers v. State Farm Mutual Auto. Ins. Co.*, 864 F.2d 700 (10th Cir.1988).

## I.

Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir.1980); Fed. R.Civ.P. 56(e).

Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence present in the motion and response. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. at 2512; *Mares,* 971 F.2d at 494.

## II.

Ball moves for summary judgment pursuant to the *Summers* doctrine based on two separate incidents of alleged misconduct by Calhoun. First, Ball asserts it never would have hired Calhoun in January, 1990, if it had known that when Calhoun finished his contract work at Ball in 1985, he kept eight company documents without Ball's permission or knowledge. The second incident of alleged misconduct occurred on August 6, 1992 when Calhoun was terminated. Upon being asked to leave the premises, Calhoun cleaned out his work area and took with him without Ball's permission or knowledge more than 5,200 company documents. Based on the evidence before me, I deny summary judgment on either basis.

The following facts are undisputed. Calhoun worked for Ball for ten months in 1985 as a job shopper or contract worker through an employment agency. In 1990, Calhoun applied for a position with Ball and was hired as a designer. At the time of his application, Calhoun submitted a resume, attached to which was a copy of an engineering drawing bearing the Ball company logo. Calhoun had produced this drawing during the time he worked for Ball as a job shopper in 1985. During the interview process, the hiring officer, Joe Winslow, consulted Calhoun's previous supervisor, Dr. Sam Stein and confirmed that Calhoun had permission to use the drawing in seeking employment. During discovery, Ball learned that Calhoun had retained in his possession eight additional documents from 1985 and more than 5,200 documents when he was terminated in August, 1992. Ball considers all of these documents proprietary and confidential.

■ *Summers v. State Farm Mutual Auto. Ins. Co.,* 864 F.2d 700 (10th Cir.1988) holds that, "when an employer is unaware of

an employee's misconduct but discharges the employee for other reasons, even unlawful ones, the employee is without a remedy under Title VII if, after discharge, the employer acquires knowledge of misconduct providing a ground for dismissal independent of the original reason for discharge, so long as the employer would have discharged the employee upon discovery of the misconduct." *Jackson v. Integra, Inc.*, 30 F.3d 141 (10th Cir. 1994) *citing Summers, id.* at 708. To bar relief based on after-acquired evidence, there must be proof that: "1) the employer was unaware of the misconduct when the employee was discharged; 2) the misconduct would have justified discharge; and 3) the employer would indeed have discharged the employee, had the employer known of the misconduct." *O'Driscoll v. Hercules, Inc.*, 12 F.3d 176, 179 (10th Cir.1994), *cert. filed* 62 U.S.L.W. 3757 U.S. April 1, 1994 (No. 93–1728).

■ To warrant summary judgment based upon Calhoun's alleged 1985 misconduct, Ball bears the burden of demonstrating that it would not have hired Calhoun in 1990 if it had known that Calhoun had kept company documents when his contract job ended in 1985. *Summers* at 708. However, questions of material fact remain on two of the *Summers* doctrine elements: 1) whether Calhoun, in fact, committed misconduct in 1985; and 2) whether Ball would, in fact, have refused to hire Calhoun had it know he had retained other documents in addition to the drawing attached to his resume. *Id.*

Neither party disputes that as part of his employment application in 1990, Calhoun proffered an engineering drawing with the Ball logo on it. Winslow, the Ball hiring officer, verified Calhoun's statement that Stein had given Calhoun permission to use the drawing in seeking employment. However, Ball has submitted no evidence that in 1985 Calhoun knew it was against company policy for him to keep copies of his work. Indeed, the only evidence on this point is that although Calhoun admits he never received specific permission to keep the eight documents from his 1985 work as a job shopper, he "felt like it was just understood. . . ." (Calhoun deposition p. 10–11). In addition, although Winslow investigated the circum-

stances surrounding Calhoun's possession of the drawing submitted with his resume, (Winslow deposition p. 6–7), Winslow took no other steps to find out if Calhoun had any other Ball documents. *Id.* at 9.

Ball has not met its burden to show indisputably that Calhoun knew it was against company policy for him to retain the eight documents in question. Under these circumstances, there remains a question of material fact as to whether Calhoun committed any misconduct in 1985.

Ball submits some evidence that Calhoun would not have been hired in 1990 had Ball's management known he retained the additional eight drawings from his stint as a job shopper. (Lewis deposition p. 31) ("I would have objected to his being hired"); (Winslow deposition p. 15–16) ("I don't believe I would have signed the approval on it" . . . "I don't believe [he would have been hired]"). The equivocal nature of this evidence is manifest when contrasted with responses given by deponents asked about Calhoun's chances for rehire after taking and retaining company documents when he was terminated in August, 1992. (Slusher deposition p. 34 "Would you want to rehire Mr. Calhoun at this stage? No."); (Winslow deposition p. 16) " . . . would the company consider rehiring him today? No, sir."). Considering the equivocal nature of this evidence in light of the lack of evidence that Calhoun knew he could not keep the eight additional work copies, I conclude there is a genuine question of material fact whether Calhoun would not, in fact, have been hired in 1990 had Ball known he had retained these other drawings.

■ The second prong of Ball's motion addresses Calhoun's actions on August 6, 1992 when, upon being terminated, he took from the workplace more than 5,200 company documents. The parties do not dispute that Calhoun took the company documents *after* he had been terminated. There is also no factual dispute that based on Calhoun's actions, he is not eligible for rehire. (Slusher deposition p. 34) and (Winslow deposition p. 16).

Strictly read, *Summers* presupposes that the employee was employed by the employer

at the time of the employee's misconduct. Stated another way, the misconduct must have occurred *before* termination. *See O'Driscoll,* 12 F.3d at 179. Consequently, the *Summers* defense would not be available for misconduct occurring *after* termination. *See Summers,* 864 F.2d 700 (misconduct occurred during employment); *Jackson v. Integra, Inc.,* 30 F.3d 141 (misrepresentations on application); *O'Day v. McDonnell Douglas Helicopter Co.,* 784 F.Supp. 1466 (D.Ariz. 1992) (removal of records before layoff). The plain language of *Summers* presupposes an employee-employer relationship. When, as here, the employment relationship ended before the alleged misconduct, the protection afforded by the *Summers* doctrine also ends. This is not an untoward result.

First, the benevolent and worthy purpose of Title VII and its counter parts is to discourage, eradicate, and remedy unlawful discrimination. The *Summers* doctrine is a judge-made narrow exception to the broad statutory proscriptions against discriminatory animus. Its application, though logical, is harsh in that it is an absolute defense and runs counter to Congressional prohibition of discrimination in the workplace. Hence, it should be read strictly and applied narrowly.

Second, the employer is not left without remedy for a former employee's alleged post-termination misconduct. Civil remedies exist such as conversion, theft of trade secrets, interference with contractual relationship, outrageous conduct and, where appropriate, injunction. Finally, criminal sanctions exist to deter unlawful retribution by disgruntled former employees.

There remains, however, the issue whether, and to what extent, Calhoun's alleged post-termination conduct affect his remedy if he succeeds on the merits of his discrimination claims. This issue has not been briefed or adequately argued. Thus, its treatment remains for another day.

## III.

### A.

Ball also seeks summary judgment on Calhoun's claim for breach of an implied employment contract. Calhoun argues that a factual issue remains whether an implied employment contract existed. I disagree.

■ An employee who is hired for an indefinite period of time is an at-will employee whose employment may be terminated by either party without cause and without notice. However, the presumption of at-will employment is not absolute. *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987). An employee may show that an employee handbook is enforceable as a unilateral contract of employment. *Wing v. J.M.B. Property Management Corp.,* 714 P.2d 916 (Colo.App.1985). An employer's distribution to employees of handbooks or policy manuals, which contain specific procedures for termination of employment, when relied on by an employee and supported by the consideration of continued service, may result in the employer becoming contractually bound to comply with those procedures. *Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988); *Keenan, supra.*

■ Here, Ball points to the terms of its employee rules of conduct in which it states clearly and unambiguously that "[a]ll employees are 'employed-at-will.' They may choose to leave the company without cause; and conversely, the company may choose to terminate any employee without cause...." (Exhibit G p. 2). Also, Ball relies on the affidavit of Joseph Winslow to establish that Ball Corporation is an "at-will" employer. (Winslow affidavit ¶ 2).

Given this disclaimer, the policies and procedures in the manual cannot constitute a manifestation of the employer's willingness to enter into a contract. *Ferrera v. Nielsen,* 799 P.2d 458, 461 (Colo.App.1990) ("Summary judgment denying contract claims and promissory estoppel based on a handbook is appropriate if the employer has clearly and conspicuously disclaimed intent to enter a contract limiting the right to discharge employees."); *Therrien v. United Air Lines, Inc.,* 670 F.Supp. 1517 (D.Colo.1987) (summary judgment granted in favor of defendant on claims for breach of contract and promissory estoppel based on disclaimer language in employee handbook). Summary judgment denying claims based on a handbook is ap-

propriate if the employer has clearly and conspicuously disclaimed intent to enter a contract limiting the right to discharge employees. *Ferrera*, at 461. Accordingly, I will grant summary judgment in favor of Ball on Calhoun's breach of contract claim.

### B.

Ball also seeks summary judgment on Calhoun's promissory estoppel claims. Calhoun argues that a factual issue remains whether the elements of promissory estoppel exist in this action. I disagree to the extent that Calhoun asserts that application of the doctrine gave rise to an employment contract in the first instance.

The doctrine of promissory estoppel is part of the common law of Colorado. *Vigoda v. Denver Urban Renewal Authority*, 646 P.2d 900 (Colo.1982). Colorado courts have recognized that an employee is entitled to enforce contractual obligations under the theory of promissory estoppel. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo.1987). The doctrine encourages fair dealing in business relationships and discourages conduct which unreasonably causes foreseeable economic loss because of action or inaction induced by a specific promise. *Kiely v. St. Germain*, 670 P.2d 764, 767 (Colo.1983). Justifiable reliance on the representations of another is the cornerstone of this action. *Id.* The doctrine as stated in section 90(1) of the *Restatement (Second) of Contracts*, is:

> A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Calhoun first asserts that during his hiring interview, he "was promised that [he] would be considered for the next available Design Engineer position...." (Calhoun Affidavit ¶ 6). Also, Calhoun outlines various policies, practices, and procedures of Ball as forming the basis of promises which could be seen as forming a contract.

The factual assertions in this case are similar to those in *Cronk v. Intermountain Rural Elec. Ass'n*, 765 P.2d 619 (Colo.App.1988). There Cronk asserted promissory estoppel based on two separate promises: the provisions in the company's employment manuals and assurances of his supervisor that a voluntary demotion would not result in reprisals. The *Cronk* court noted:

> As to his first theory, we note that an employee is entitled to enforce termination procedures in an employment manual if he can demonstrate that the employer should reasonably have expected the employee to consider the manual as a commitment from the employer to follow the termination procedures, that the employee reasonably relied on the termination procedures to his detriment, and that injustice can be avoided only by enforcement of the termination procedures. *Continental Air Lines, Inc. v. Keenan, supra.*

> .     .     .     .     .

> As to Cronk's second theory, that his supervisor promised no reprisals for his voluntary demotion and thus created an enforceable contract, we note that the trial court resolved the factual issue concerning whether an enforceable promise had been made. This constituted error.

*Cronk*, at 624.

Here, the specific and unambiguous disclaimer in Ball's employee manual bars recovery based on Calhoun's claim that promises allegedly made to him by Ball employees created an employment contract rather than an at-will relationship. *Ferrera, supra*, and *Therrien, supra*. However, there remains a genuine dispute of fact whether and under what circumstances Calhoun was promised a promotion to design engineer. Under these circumstances, I will grant summary judgment on behalf of Ball on plaintiff's termination theory based on promissory estoppel. I will deny summary judgment on plaintiff's failure to promote theory based on promissory estoppel.

Accordingly, it is ordered that

1. defendant's motion for summary judgment on plaintiff's first claim for relief based on breach of contract is GRANTED;

2. defendant's motion for summary judgment on plaintiff's second claim for relief based on promissory estoppel regarding an employment contract is GRANTED;

3. defendant's motion for summary judgment on plaintiff's second claim for relief based on promissory estoppel regarding promotion to design engineer is DENIED;

4. defendant's motion for summary judgment based on after-acquired evidence of misconduct by plaintiff is DENIED on all claims;

5. trial setting conference is set for 8:30 a.m. on Wednesday, October 26, 1994.