**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 7 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

COLORADO VISIONARY ACADEMY,
a Colorado non-profit corporation,

      Plaintiff-Appellant,

v.

MEDTRONIC, INC., a Minnesota
corporation; TOBIN REAL ESTATE
COMPANY d/b/a CRESA PARTNERS-
MINNEAPOLIS/ST. PAUL, a Minnesota
corporation,

      Defendants-Appellees.

No. 02-1234

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 99-N-1628)

Miles M. Gersh (James S. Helfrich with him on the briefs) of Gersh & Helfrich, LLP,
Denver, Colorado, for Plaintiff -Appellant.

Stuart Pack (Kevin C. Paul and Todd P. Walker with him on the brief) of Gorsuch Kirgis
LLP, Denver, Colorado, for Defendant - Appellee Medtronic, Inc.

Before **KELLY, HOLLOWAY** and **HARTZ**, Circuit Judges.

**HOLLOWAY**, Circuit Judge.

In this diversity action arising from negotiations for the sale of a building, the district court granted summary judgment for the defendant Medtronic, Inc. (Medtronic) on the negligent misrepresentation claim of plaintiff Colorado Visionary Academy (Colorado Visionary). Order and Memorandum of Decision (November 9, 2001) at 30. Judgment for Medtronic was granted on Colorado Visionary's promissory estoppel claim after a bench trial. III Aplt. App. 993-94. Final judgment was entered and the appeal therefrom is timely.[1]

We first hold that the district court erred in concluding that Colorado Visionary's negligent misrepresentation claim could not be maintained under the circumstances of the case, and we reverse that ruling. Because Colorado Visionary was entitled to a jury trial on that claim, and because any explicit findings of the jury and any necessary inferences from a general verdict would have been binding on the district court in the bench trial of the promissory estoppel claim, we vacate the judgment for Medtronic on the promissory estoppel claim with directions to reconsider that claim after the jury trial of the negligent misrepresentation claim. We also vacate the district judge's pretrial ruling which precluded plaintiff from presenting evidence of lost profits on its promissory estoppel claim. The remedies available, if that claim succeeds, must be determined in light of the specific facts

---

[1]Appellant's briefs list the second defendant, Tobin Real Estate Company d/b/a CRESA Partners-Minneapolis/St. Paul, as an appellee, but not one word of the briefs purports to show any error made by the district court in its rulings as to this defendant. No entry of appearance was made on behalf of this defendant, and appellant's silence in response indicates that appellant probably never intended to appeal the judgement as to this defendant. In any event, whatever appellant's intention may have been, the failure to pursue the appeal as to the second defendant constitutes a waiver of any error in the judgment as to that party.

and circumstances as they are finally determined.

**I**

*THE FACTUAL BACKGROUND*

Only a very general overview of the background of this litigation is necessary for the context of our analysis of the legal issues involved in this appeal. Because of our holdings in Part II and Part III, *infra*, the relevant facts are stated in the light most favorable to Colorado Visionary; we need not give deference to the findings of the district court.

Plaintiff Colorado Visionary Academy is a charter school. In the spring and summer of 1999, it needed to find a new site for the upcoming school year. Although plaintiff had explored other possibilities, it was very interested in a facility owned and operated by Medtronic. Defendant Medtronic manufactures and sells health equipment. Medtronic had a large building in Parker, Colorado, that it used for research and manufacturing. Medtronic was interested in selling the facility to Colorado Visionary and leasing back a portion of the space for its continued operations.

A proposal along those lines was made. Negotiations were quite serious and reached the point where apparently at least some of those involved believed that a final deal would be struck. Colorado Visionary had begun moving some administrators into the building and was preparing to do some renovation. In the end, however, Medtronic's management decided against the sale, apparently over liability concerns about having schoolchildren in the same building where it was conducting its operations. This decision was communicated

to Colorado Visionary on August 4, 1999.

In June, 1999, however, Colorado Visionary had allegedly been given assurances that the deal would close. Among the statements allegedly made by representatives of Medtronic was that the deal "had been approved at the highest corporate level," that the deal was "a friendly transaction," and that any problems would be worked out.

In reliance on these assurances, Colorado Visionary declined an opportunity to lease a different site and began preparations for moving into Medtronic's building. With Medtronic's consent, parents were invited to a meeting there. Medtronic began moving out of the area that was to be used by the school. In early August 1999, contractors began physical work at the facility, including some demolition. But on August 4, with school to begin in September, word came that Medtronic would not go through with the deal. This announcement came from Medtronic's general counsel. About one hundred students who had been expected to enroll did not, and this of course substantially reduced Colorado Visionary's revenues. After trying for a year to continue on a temporary campus, the school lost its charter from the local school district.

This suit by Colorado Visionary against Medtronic and Tobin Real Estate Company was commenced on August 20, 1999. On June 12, 2000, Medtronic moved for summary judgment on Colorado Visionary's amended complaint in that action. This amended complaint had been accepted by a magistrate judge on March 30, 2000. In its motion for summary judgment, Medtronic argued that Colorado Visionary's promissory estoppel claim

should be dismissed because Colorado Visionary did not rely on Medtronic's representations and because the proposed transactions between Colorado Visionary and Medtronic were illegal and impossible to perform. See Order and Memorandum of Decision at 13. Medtronic contended that Colorado Visionary's negligent misrepresentation claim should be dismissed because it was premised on a promise to act in the future; there was no third party action to support the claim; negligent misrepresentation cannot properly be stated as a claim between parties to a contract; and the economic loss rule barred Colorado Visionary's negligent representation claim.

Medtronic's motion for summary judgment was granted in part and denied in part. Summary judgment was granted with respect to Colorado Visionary's negligent misrepresentation claim and denied with respect to Colorado Visionary's promissory estoppel claim. Order and Memorandum of Decision at 30.

## II

### *THE NEGLIGENT MISREPRESENTATION CLAIM*

We will first determine whether the district court was correct in deciding that under Colorado law, Colorado Visionary's negligent misrepresentation claim against Medtronic could not be maintained under the circumstances of this case. This is an issue of law that we review *de novo*. *See Lampkin v. Little*, 286 F.3d 1206, 1210 (10th Cir. 2002).

Colorado has adopted the Restatement (Second) of Torts § 552 definition of a claim

for negligent misrepresentation. That section provides:

> Information Negligently Supplied for the Guidance of Others.
>
> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552 (1977).

The district judge characterized the heart of Medtronic's argument for summary judgment on the negligent misrepresentation claim as based on the contention that "the economic loss rule prevents recovery because Colorado Visionary has not shown an independent duty of care between two parties negotiating a contract at arm's length." Order and Memorandum of Decision (Nov. 13, 2001) at 23. We note this succinct definition of the economic loss rule: "As a general rule, no cause of action lies in tort when purely economic damage is caused by negligent breach of a contractual duty." *Jardel Enterprises, Inc. v. Triconsultants, Inc.*, 770 P.2d 1301, 1303 (Colo. App. 1988) (quoted in *Town of Alma v. AZCO Construction, Inc.*, 10 P.3d 1256, 1261 (Colo. 2000)).[2] The parties devote considerable attention in their appellate briefs to discussion of the economic loss rule, disputing whether or not the district court applied the rule in its decision on Colorado Visionary's negligent misrepresentation claim.

---

[2]Further discussion of the economic loss rule appears in *Town of Alma*, 10 P.3d at 1261-63.

The district judge clearly recognized that under Colorado law, the economic loss rule has no application to a valid claim for negligent misrepresentation, stating: "Where a duty independent of contractual obligation exists however, the economic loss rule is inapplicable because the claim is not within the scope of the rule." Order and Memorandum of Decision at 24. The issue is whether or not Colorado Visionary's negligent misrepresentation claim is viable, and that in turn depends on whether Medtronic was under a duty to avoid negligently misrepresenting facts on which Colorado Visionary might reasonably be expected to rely.

The district judge held that the negligent misrepresentation theory does not apply to negotiations for a contract, absent some special circumstances. After reviewing the Colorado decisions, the judge concluded: "Colorado caselaw indicates that section 552 has not been used to establish an independent duty of care between contracting parties without affirmative action or expertise on the part of the party supplying information." Memorandum and Order of Decision at 25. The judge later observed that "[t]o the extent that Colorado law has arguably not restricted liability for negligent misrepresentation to professional suppliers of information, a situation beyond adversarial bargaining existed – i.e. the party making [the] representation had a special expertise about the information conveyed." *Id.* at 27 (citing *First Nat. Bank v. Collins*, 616 P.2d 154 (Colo. App. 1980)). "Most importantly," the judge said, "in all cases where liability was found, the supplier of information was allegedly acting to further the recipient's economic interests, not the economic interests of the supplier." Order

and Memorandum of Decision at 27. This type of situation differs, the judge said, from "an adversarial bargaining situation" in which "each party acts to further its own economic interest." *Id.*

Because we find no controlling Colorado authority on the issue as framed by the district court, our task is to predict how the Colorado Supreme Court would rule if that court were faced with this issue. *See FDIC v. Schuchmann*, 235 F.3d 1217, 1225 (10th Cir. 2000). In doing so, we do not limit ourselves to the technical holdings of the cases. Instead, "[b]oth the holdings and considered dicta of the State Courts should be applied." *Hardy Salt Co. v. Southern Pac. Trans. Co.*, 501 F.2d 1156, 1163 (10th Cir. 1974) (citing *Hawks v. Hamill*, 288 U.S. 52, 59 (1933)); *see also Curtis Publishing Co. v. Cassel*, 302 F.2d 132, 135 (10th Cir. 1962). No deference is given to the federal district court's views of state law, which we review *de novo*. *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994) (citing *Salve Regina College v. Russell*, 499 U.S. 225 (1991)).

We conclude that the weight of the precedents favors the position advanced by Colorado Visionary as to the scope of negligent representation liability. At the outset we note tension between the Restatement's definition of the tort, which has been adopted in Colorado, and the rule which the district court distilled from the Colorado cases. Section 552 on its face applies when a person supplies false information in a transaction "in which he has a pecuniary interest . . . ." This contradicts the district court's conclusion that the tort applies only when the supplier of information "was allegedly acting to further the recipient's

economic interests, not the economic interests of the supplier." Order and Memorandum of Decision at 27.

In *Keller v. A.O. Smith Harvestore Product, Inc.*, 819 P.2d 69 (Colo. 1991), the State's highest court answered two questions certified by the Tenth Circuit, the first of which was whether a cause of action for negligent misrepresentation would lie against the manufacturer of a product for representations made during the course of the sale despite the execution of a fully integrated sales agreement. In answering "yes," the Colorado court spoke in broad terms: *"It is thus clear that a contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for an independent tort claim . . . ."* 819 P.2d at 72 (emphasis added). This broad language does not suggest that the tort is inapplicable to the ordinary adversarial bargaining circumstances prevalent in most cases. Nor do the circumstances of *Keller* necessarily support the district court's holding. The plaintiffs in *Keller* were a ranching couple who purchased two silos from the defendant manufacturer. This on its face suggests an ordinary, adversarial bargaining situation. Certain provisions of the written contract are of particular interest for our present analysis. As noted, the district judge was of the opinion that "in all cases where liability was found, the supplier of information was allegedly acting to further the recipient's economic interests, not the economic interests of the supplier." But in *Keller* the supplier (of both the silo systems and the information at issue) used an order form which required the buyers to expressly disclaim that they were relying on the seller to supply information to

further their (the buyers') interests. Thus, the order form stated that the buyers were "not relying on the skill or judgment of the Manufacturer or Seller . . . ." 819 P.2d at 71.

Moreover, it is instructive to examine the cases cited by the Colorado Supreme Court in *Keller*. The state court in that case began its analysis by citing the definition of the tort of negligent misrepresentation from the Restatement (as quoted *supra*) and noting a number of cases from other jurisdictions recognizing the tort. 819 P.2d at 72. The first case cited is *Rosales v. AT&T Information Systems, Inc.*, 702 F.Supp. 1489 (D.Colo. 1988). In that case, one of the plaintiffs had been an employee of one of the defendants and had also been negotiating to acquire a dealership from his employer. As the negotiations proceeded, plaintiff had been advised by authorized agents of the employer that he should resign because his employment was seen as a conflict with his application for a dealership. The plaintiff followed this advice but then his application was turned down.

In his action against his former employer, the plaintiff had pleaded a claim for negligent misrepresentation (along with several other theories of relief). The defendant employer moved to dismiss that count of the complaint under Fed. R. Civ. P. 12(b)(6), contending that the tort of negligent misrepresentation could not be pursued under the circumstances of that case. Defendant in that case argued, more specifically, that the tort of negligent misrepresentation is limited "to persons and entities engaged in the business of supplying information which their customers might rely upon in taking some additional action." 702 F.Supp. at 1500. The federal district judge in that case rejected the argument,

-10-

noting that the contention was in conflict with the holding of *First National Bank v. Collins*, 616 P.2d 154 (Colo. Ct. App. 1980).[3] More importantly for our purposes, the supplier of information in that case was the agent of the defendant, but there is no indication that the court perceived that the tort of negligent misrepresentation required that the supplier of information purported to act in the interests of the recipient of the information, as the district judge in the instant case held. Again, this case was cited with approval by the Colorado Supreme Court and so is some indication of the state's law on the issue.

In *Keller*, the Colorado Supreme Court also cited with apparent approval *Wagner v. Cutler*, 757 P.2d 779 (Mont. 1988); and *First Interstate Bank v. Foutz*, 764 P.2d 1307 (N.M. 1988). The dispute in *Wagner* centered on the sale of a house, and the plaintiff alleged that the seller failed to use reasonable care in describing the condition of the house. There is no indication in the case that the negotiations were anything but the typical, arm's length process. In *Foutz*, the plaintiff was the guarantor on a loan made by the defendant bank who sued the bank alleging that the bank had misrepresented the assets of the maker of the note. Again, we see no indication that this case involved the type of special relationship or special undertaking that the district judge in the instant case held was necessary to support a claim for negligent misrepresentation.

Although other cases cited in *Keller* do involve defendants who provided information

---

[3]We discuss *Collins* further *infra*.

as part of their profession,[4] the examples just discussed indicate rather strongly that the Colorado Supreme Court did not consider this to be an element of the negligent misrepresentation claim. Moreover, another case cited in *Keller* reinforces this inference. Following its initial discussion of negligent misrepresentation, the portion of the opinion in which the above discussed cases were cited, the Colorado court addressed the defendant's contention that the claim in that case was in any event precluded by an integration clause in the contract. The details of this argument are not relevant here.

What is relevant, though, is that in its analysis rejecting the argument the Colorado court cited specifically a footnote in a Maryland case that quite explicitly rejects the contention that the tort of negligent misrepresentation is inapplicable in a case involving adversarial, arm's length negotiations. In that footnote, the Maryland court noted that the defendants there had argued that the tort of negligent misrepresentation could never be "applied to statements made in connection with consummation of an arm's length transaction" and rejected the argument categorically. *Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534, 539 n.7 (Md. 1982). The footnote goes on to address the argument that the integration clause of the contract at issue there shielded the defendants from liability and also rejected that argument.

In this context, an argument could be made that the Colorado court was citing the

---

[4]Defendants in *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 367 S.E.2d 609 (N.C. 1988), were accountants. Defendant in *Hoffer v. State*, 755 P.2d 781 (Wash. 1988), was an auditor.

Maryland court's footnote only for the second point, not the first, but we do not think that argument would be persuasive. The undeniable fact is that the Colorado court cited specifically a footnote that explicitly rejects the argument made by Medtronic in this case and accepted by the district judge. In light of the paucity of contrary expressions by the Colorado courts,[5] it was error for the district court to ignore this important indication of the views of the Colorado Supreme Court.

And there is further support for the same view to be found in cases from the Colorado courts. The Supreme Court of Colorado addressed issues concerning the damages recoverable in a negligent misrepresentation case and the evidence required to establish damages in *Western Cities Broadcasting, Inc. v. Schueller*, 849 P.2d 44, 49-51 (Colo. 1993) (en banc). The dispute in that case was between a lessor and lessee, with no indication that the circumstances involved anything other than arm's length bargaining. The issue with which we are concerned was not raised in that case, making it only a weak indication of the views of the Colorado court. Nevertheless, the state's highest court gave no indication of any disapproval of the use of the negligent misrepresentation claim in the circumstances there, and that is at least some indication of approval. We would be hesitant to draw a conclusion from this bit of datum alone, but as we have shown this case hardly stands alone. Instead, it adds to the weight of authority indicating that Colorado does not limit the reach of the tort

_____

[5]Admittedly, some language in *Mehaffy, Rider, Windholz & Wilson v. Cental Bank Denver*, 892 P.2d 230, 236 (Colo. 1995) (en banc), lends weak support to the argument that the tort liability is limited to professional purveyors of information. But that reed is much too weak in view of the totality of the evidence that may be gleaned from the Colorado cases.

in the way that the district court thought that it does.

The district judge relied upon *First National Bank v. Collins*, 616 P.2d 154 (Colo. Ct. App. 1980). We do not agree that *Collins* conflicts with the analysis we make of the negligent misrepresentation tort. In fact, the Colorado Court of Appeals there concluded that the plaintiff Collins had sufficiently stated a claim for which relief could be granted, pointing to Collins' claim that he contacted the Western Auto Company regarding the possibility of owning an associated store; that the auto company supplied an agent to assist him in setting up the business; and that the auto company's agent negligently made incorrect statements to Collins regarding the organization of the store inventory to be supplied and projected profits; that relying on the misrepresentations he became an owner of the store and the misrepresentations of the company and its agents caused the damages prayed for.

Regarding those allegations as true, the Colorado Court of Appeals determined that Collins sufficiently stated a claim for relief to be granted on the tort liability for negligent misrepresentation, 616 P.2d 154-156. We do not feel that the opinion in *Collins* held the expertise of a speaker as significant on the negligent misrepresentation case. This is because, first, the court never said that, and second, the court seems to have viewed the relationship as one that would ordinarily exist between strangers, *i.e.*, an arm's length bargain. We therefore conclude that *Collins* supports our analysis and does not undermine it.

The district judge also said that his holding was in accord with our holding in *United Intern. Holdings, Inc. v. The Wharf (Holdings) Ltd.*, 210 F.3d 1207 (10th Cir. 2000), *aff'd*,

532 U.S. 588 (2001). Again, we disagree. In that case, we held that the plaintiff's claims of negligent misrepresentation and breach of fiduciary duty were not barred by the economic loss rule. 210 F.3d at 1226-27. The district judge characterized the pertinent part of *Wharf* as holding that the economic loss rule did not bar the negligent misrepresentation claim because the independent duty necessary for the basis of a tort claim in a contractual situation was provided by the fiduciary relationship of the parties as joint venturers. Order and Memorandum of Decision at 29. But our opinion clearly held that the plaintiff could pursue both negligent misrepresentation and breach of fiduciary duty claims (as well as a fraud claim). We find nothing in the discussion of the negligent misrepresentation claim that relies on the fiduciary duties of the defendant. Accordingly, we must conclude that the district judge in the instant case misread our precedential decision.

In sum, our review of Colorado law leads us to the conclusion that the tort of negligent misrepresentation can arise from ordinary, arm's length bargaining that was expected to lead to a contractual relationship. We therefore reverse the holding of the district court and order that the negligent misrepresentation claim be reinstated.

### III

#### *THE PROMISSORY ESTOPPEL CLAIM*

After granting judgment as a matter of law on the plaintiff's negligent misrepresentation claim, the trial judge determined that plaintiff's remaining claim, based on the theory of promissory estoppel, would be tried to the court. On appeal, Colorado

-15-

Visionary concedes that this claim is an equitable one on which it would not be entitled to a jury trial if it had been the only claim involved in the case.[6] Colorado Visionary contends, however, that it was entitled to trial by jury on the negligent misrepresentation claim, and we have decided that, indeed, the district court erred in deciding that claim as a matter of law. It follows, Colorado Visionary argues, that the decision on the promissory estoppel claim should be reversed or vacated because, but for the error in eliminating the negligent misrepresentation claim before trial, the outcome of the trial of the equitable claim of promissory estoppel might have been different. The argument is that Colorado Visionary would have been entitled to the benefit of any jury findings in its favor on the legal claim of negligent misrepresentation, findings which might have precluded the district judge from making certain of the findings that he eventually did make on the equitable claim.

We conclude that Colorado Visionary is correct. Under well settled principles, when a plaintiff brings both legal and equitable claims in the same action, the Seventh Amendment right to jury trial on the legal claims must be preserved by trying those claims first (or at least simultaneously with the equitable claims), and the jury's findings on any common questions of fact must be applied when the court decides the equitable claims. *See Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 556 n.4 (1990).

We discussed the applicable principles at some length in *Ag Services of America, Inc.*

---

[6]Because the issue as to whether the promissory estoppel claim is an equitable one has not been presented to us, we express no opinion on whether this is correct as a matter of federal law, which governs the right to a jury trial in diversity cases. *Simler v. Conner*, 372 U.S. 221 (1963).

*v. Nielsen*, 231 F.3d 726, 730-31 (10th Cir. 2000). Following these principles in the instant case means that after the legal claim has been tried to a jury, any special findings favorable to plaintiff or a general verdict favorable to plaintiff will have to be analyzed by the trial judge to determine their impact, if any, on the plaintiff's equitable claim. This includes, as more fully discussed in *Nielsen*, giving due effect to any findings necessarily implicit in a general verdict, if the jury decides the legal claim in plaintiff's favor.

We note that defendant contends that there are no common questions of fact on the legal claim of negligent misrepresentation and the allegedly equitable claim of promissory estoppel. On the other hand, plaintiff points out that defendant made assertions in the court below that are quite at odds with this contention. In any event, this will be for the district court to determine on remand.

Medtronic also argues that the district court's ruling on this promissory estoppel claim should not be disturbed because the district court assumed facts in favor of Colorado Visionary before ruling as a matter of law that plaintiff was not entitled to recover even if the facts were as assumed. We have given careful consideration to this argument because it seems, at least at first blush, to be forceful. Nevertheless, out of an abundance of caution we conclude that the decision below should be vacated nevertheless.

The trial judge made very detailed and careful findings after the close of the evidence. Moreover, as Medtronic points out, after announcing these findings, which on the whole were unfavorable to Colorado Visionary, the judge did ground his ultimate ruling on

conclusions he thought would follow even if he had decided critical issues in Colorado Visionary's favor. The trial judge held that even if certain promissory statements had been made (contrary to his factual findings), the statements were not of a type on which plaintiff could have reasonably relied, given the context of the dealings. Moreover, he also held that this was not a case in which injustice could be avoided only by enforcement of the promises.

We nevertheless conclude that the decision should be vacated so that the judge can view the issue in the light of the evidence as it comes out in the jury trial of the negligent misrepresentation claim. We cannot ascertain the likelihood that the ultimate result may differ. But it is more in keeping with the right to trial by jury to leave open the opportunity to decide this claim in light of the evidence, and especially the decision of the jury, after trial.

**IV**

*DAMAGES RECOVERABLE ON THE PROMISSORY ESTOPPEL CLAIM*

The third and last issue raised by plaintiff-appellant Colorado Visionary concerns the damages recoverable under Colorado law on a claim for promissory estoppel. The district court in the instant case ruled before trial that plaintiff was not entitled to recovery of lost profits on the claim. Although the district court ultimately ruled that defendant was not liable to plaintiff at all on this claim, because of our disposition of the previous issues we think it proper for us to decide this issue for the guidance of the district court on remand.

At the beginning of the pretrial conference, the judge said: "I don't understand how lost profits are in this case at all. I'm not going to hear any evidence of lost profits. That's

-18-

not the law." III App. 839. Thus, it seems fairly clear that the judge's view was that lost profits are not recoverable as a matter of law on a claim for promissory estoppel. But although the judge said that the plaintiff's position was contrary to Colorado law, he cited no authority for that conclusion. The judge did refer to the leading Colorado case on point, *Kiely v. St. Germain*, 670 P.2d 764 (Colo. 1983), but that case teaches that the issue must be decided in light of the specific circumstances of the case and so does not support the court's ruling.

In *Kiely*, the court adopted section 139 of the Restatement (Second) of Contracts as the statement of principles governing the remedies available in an action for promissory estoppel when, as in this case, the defense raises a statute of frauds defense. The principles require a careful balancing of several factors. Section 139 provides:

*Enforcement by Virtue of Action in Reliance*

(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds *if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.*

(2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant:
(a) the availability and adequacy of other remedies, particularly cancellation and restitution;
(b) the definite and substantial character of the action or forbearance in relation to the remedy sought;
(c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;
(d) the reasonableness of the action or forbearance; [and]

(e) the extent to which the action or forbearance was foreseeable by the promisor.

*Kiely*, 670 P.2d at 769 (quoting Restatement (Second) of Contracts § 139) (emphasis added).

Notably, this statement of principles includes an express command to limit remedies as justice requires. Thus, it is clear that a plaintiff is not necessarily entitled to all remedies that would have been available on a breach of contract claim. But for our purposes it is most significant that the court in *Kiely* specifically said that the analysis must be done in light of the evidence. Here, the district judge had previously ruled that material issues of fact precluded summary judgment for the defendant on whether the plaintiff had relied on the representations made by representatives of the defendant and whether plaintiff's alleged reliance was reasonable. II Aplt. App. 727-30. Yet, even though those disputed issues are specifically identified as significant circumstances to be considered in determining the appropriate remedy, the trial judge here ruled before any evidence had been presented.

Plaintiff cites a number of cases which, it contends, show that Colorado courts have often awarded "benefit of the bargain" or "expectation" damages, as opposed to mere restitutionary damages, on promissory estoppel claims. In one case, the state's high court said, "A promise that is binding pursuant to the doctrine of promissory estoppel is a contract, and full-scale enforcement by normal remedies is appropriate." *Board of County Commissioners v. DeLozier*, 917 P.2d 714, 716 (Colo. 1996). Medtronic disputes Colorado Visionary's assertions and points out that the above quote from *DeLozier* is the entirety of the discussion of remedies in that case and is, as Medtronic contends, "pure dictum." We

agree to the extent that we conclude that the more nuanced analysis of *Kiely* is a more authoritative statement of Colorado law on the remedies available in this case.

In view of the analysis adopted by the court in *Kiely*, moreover, we do not think that it is helpful to compare the number of cases awarding one type of remedy with the number of cases awarding another type. The result depends on the particular circumstances of the case, and the error by the district court in this case was that it ruled before the facts were clear. As with the plaintiff's promissory estoppel claim generally, these particular circumstances may be shaped by the jury's verdict on the legal claim of negligent misrepresentation. Thus, the error in deciding the remedial issue before trial was not cured by the fact that the district judge's eventual findings eliminated the issue altogether.

We therefore do not reach the issue whether the plaintiff should be allowed to recover for lost profits. If the plaintiff prevails at trial on its negligent misrepresentation claim, it will then be the district court's task to reconsider its rulings on the promissory estoppel claim, both as to liability and as to damages, to ensure that it has given full deference to the jury's verdict and its findings, if any, in accord with the principles set out in *Ag Services* as discussed *supra*.

## V

### *CONCLUSION*

The judgment of the district court in favor of defendant-appellee Medtronic is REVERSED, and the case is REMANDED for further proceedings in accordance with this

-21-

opinion.